# FEDERAL TRADE COMMISSION v. PACIFIC STATES PAPER TRADE ASSOCIATION.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 71. Argued December 8, 1926.—Decided January 3, 1927.

1. Where the facts stipulated before the Federal Trade Commission showed that wholesale dealers dominating the trade in a certain commodity in several States were members of local and general trade associations; that uniform prices in intrastate sales were fixed and diligently enforced by the local associations, and in the case of one of them, were, by understanding among its members, to be applied to sales made outside of the State; that each local association applied the local prices to sales made locally but filled by direct shipment from outside mills; and that the salesmen of each, in making sales beyond its State, habitually quoted prices from the same lists which were controlling locally—the Commission was justified in inferring that such use of the lists in sales over the state line lessened competition and fixed prices in interstate commerce,

although it did not appear expressly that the fixed prices were made obligatory by rule, or were adhered to, in such interstate business. P. 61.

2. An understanding, express or tacit, that agreed prices will be followed in interstate sales, is enough to constitute transgression of the law. P. 62.

3. Organized maintenance of uniform prices in local business may lend probative significance and weight to facts pointing in the direction of like restraint in interstate business. P. 62.

4. Agreements between wholesalers, by which they fix prices to be charged retailers within the State for goods to be shipped on the wholesaler's order from mills directly to the retailer or to the wholesaler for delivery to him, are agreements to fix prices in interstate commerce, in cases where the seller elects to procure the goods and their shipment from mills outside the State. P. 63.

5. An order of the Federal Trade Commission forbidding agreements fixing prices for sales to be filled by shipments from outside the State, and the making or distributing of price lists to be used in such sales, is valid. P. 66.

6. A respondent in certiorari who did not seek review for himself is not entitled to question the correctness of the decree of the court below. P. 66.

4 Fed. (2d) 457, reversed in part.

CERTIORARI (268 U. S. 684) to a judgment of the Circuit Court of Appeals reviewing, and in part setting aside or modifying, an order of the Federal Trade Commission, requiring the respondents to cease and desist from certain practices which are described in the opinions, here and in the court below. The respondents, included, besides individuals, five local trade associations whose members were wholesale dealers and jobbers in paper, two associations or conferences made up of two or more of the local associations, and a general association, the membership of which was drawn from all five of the local associations.

*Mr. Adrien F. Busick,* with whom *Solicitor General Mitchell* and *Mr. Bayard T. Hainer* were on the brief, for the petitioner.

Agreements by which wholesalers fix prices to be charged retailers within the State for paper shipped on

the wholesaler's order direct from mills outside the State
to the wholesaler's retail customers are agreements to fix
prices in interstate commerce. "Commerce among the
States is not a technical legal conception, but a practical
one drawn from the course of business." *Swift & Co.* v.
*United States,* 196 U. S. 375. It exists apart from any
contract. Whenever commodities flow in a constantly
recurring stream from one State to another, this flow con-
stitutes commerce itself. *Swift & Co.* v. *United States,
supra; Dahnke Milling Co.* v. *Bondurant,* 257 U. S. 282;
*Lemke* v. *Farmers' Grain Co.,* 258 U. S. 50; *Stafford* v.
*Wallace,* 258 U. S. 495; *Chicago Board of Trade* v. *Olsen,*
262 U. S. 1.

All negotiations and contracts looking to the introduc-
tion of commodities from one State to another are a part
of the commerce and within the regulating power and
protection of the commerce clause. *Crenshaw* v. *Arkan-
sas,* 227 U. S. 389; *Robbins* v. *Shelby County Taxing
Dist.,* 120 U. S. 489; *Stewart* v. *Michigan,* 232 U. S. 665;
*Rearick* v. *Pennsylvania,* 203 U. S. 507; *Dozier* v. *Ala-
bama,* 218 U. S. 124; *Davis* v. *Virginia,* 236 U. S. 697.
The purchase of commodities within one State, though
the transaction be one entered into and performed wholly
within the State, is a part of interstate commerce, where
the proof is that the commodity so purchased is, after
purchase, habitually shipped beyond the limits of the
State. *Dahnke Milling Co.* v. *Bondurant, supra; Lemke*
v. *Farmers' Grain Co., supra.* Likewise the sale at desti-
nation after interstate shipment and before the goods are
commingled with property within the State is a part of
interstate commerce. *Swift & Co.* v. *United States,
supra; Stafford* v. *Wallace, supra.* Thus all of the trans-
actions immediately connected with the movement of the
goods, both at the point of origin of the movement and
at destination, are a part and parcel of the commerce.
See *Addyston Pipe Co.* v. *United States,* 175 U. S. 211;
*Western Union Tel. Co.* v. *Foster,* 247 U. S. 105; *Missouri*

v. *Kansas Gas Co.,* 265 U. S. 298; *Peoples Nat. Gas Co.* v. *Pub. Serv. Comm. of Pa.,* 270 U. S. 550.

The fact that the contracts of sale between the wholesalers, members of the associations, and their retail customers are negotiated within the State, does not take the transaction out of interstate commerce.

Where goods are brought into the State to satisfy contracts of sale previously made, the transactions are interstate commerce not subject to state regulation. *Western Union Tel. Co.,* v. *Foster, supra; Sonneborn* v. *Cureton,* 262 U. S. 506. The fact that the wholesaler's contract with the retailer does not in terms require the former to ship direct from the mill does not defeat federal jurisdiction. See cases cited and *Western Oil Ref. Co.* v. *Lipscomb,* 244 U. S. 346. Nor is the absence of any privity of contract between the mill owner and the retail customers of the wholesalers in any way controlling in determining whether the agreements with respect to these direct shipments are subject to federal control. *Western Union Tel. Co.* v. *Foster, supra. Ware & Leland* v. *Mobile County,* 209 U. S. 405, distinguished. But even if the sales by the wholesalers to their retail customers for direct shipment from without the State were not a part of interstate commerce, the agreements fixing prices on such sales so directly affect and burden interstate commerce as to be within federal control.

The use in interstate commerce of the list of agreed prices binding with respect to sales within the several States, lessens competition in interstate commerce and may be prohibited by the Federal Government. The conclusion which the Commission drew from the admitted evidentiary facts is a conclusion of fact unmixed with any question of law. *Levins* v. *Revegno,* 71 Cal. 273. The Commission's findings as to the facts if supported by evidence are conclusive. *Federal Trade Comm.* v. *Curtis Publishing Co.,* 260 U. S. 568; *Nat. Harness Mfrs. Assn.*

v. *Federal Trade Comm.*, 261 Fed. 170; *Federal Trade Commission* v. *Winsted Hosiery Co.*, 258 U. S. 483; *Amer. Column Co.* v. *United States*, 257 U. S. 377; *United States* v. *Amer. Oil Co.*, 262 U. S. 371; *Federal Trade Comm.* v. *Beech-Nut Packing Co.*, 257 U. S. 441.

Mr. *Warren Olney, Jr.*, with whom *Messrs. Edward J. McCutchen* and *Allan P. Matthew* were on the brief, for the respondents.

A contract of sale between parties in the same State for goods to be delivered within that State, which may be filled by the seller at his option, by goods from whatever source he pleases, is not made a sale in interstate commerce by the fact that the seller chooses to supply the goods by ordering them from a manufacturer without the State. *Ware & Leland* v. *Mobile County*, 209 U. S. 405; *Banker Bros. Co.* v. *Pennsylvania*, 222 U. S. 210; *Public Utilities Commission* v. *Landon*, 249 U. S. 236; *Wagner* v. *Covington*, 251 U. S. 95; *Moore* v. *New York Cotton Exchange*, 270 U. S. 593; *Ward Baking Co.* v. *Federal Trade Commission*, 264 Fed. 330; *Winslow* v. *Federal Trade Commission*, 277 Fed. 206, Certiorari denied, 258 U. S. 618; *Kansas City Structural Steel Co.* v. *Arkansas*, 269 U. S. 148.

The Commission's order, par. (*b*), in so far as it forbids the use by the respondents in combination, in the making or soliciting of interstate sales, of price lists issued by any local association or otherwise agreed upon, is without support in and contrary to the record. In so far as it forbids such use by the respondents "separately," it is contrary to law. In order that an act may come within the prohibition of the Anti-trust Act there must be present the element of combination or concert of action between two or more persons. In so far as the Anti-trust Act is concerned, any individual dealer has the right to do what he pleases in the conduct of his business regardless of the effect on interstate commerce,

provided only he act independently and not in conjunction with others. *Federal Trade Commission* v. *Raymond Bros. Co.,* 263 U. S. 565; *Western Sugar Ref. Co.* v. *Federal Trade Comm.,* 275 Fed. 725. Paragraph (*b*), in so far as it forbids the defendants from compiling or publishing any joint or uniform price list for use in interstate commerce, is without support in and contrary to the record.

This Court ought to consider the objections made by the respondents to paragraphs (*e*) and (*g*) and (*h*) of the Commission's order which were overruled by the judgment of the Circuit Court of Appeals. Distinguishing *Hubbard* v. *Todd,* 171 U. S. 474; *Montana Mining Co.* v. *St. Louis Mining Co.,* 186 U. S. 24; *French Republic* v. *Saratoga Vichy,* 191 U. S. 427; *Alice State Bank* v. *Houston Pasture Co.,* 247 U. S. 242. On certiorari the entire record is before the Court, with full power to decide the case as it was presented to the Circuit Court of Appeals. See *Lutcher & Moore Lumber Co.* v. *Knight,* 217 U. S. 257, 267; *Delk* v. *St. Louis, etc., Co.,* 220 U. S. 580; *Cole* v. *Ralph,* 252 U. S. 286. From the foregoing decisions we take it (*a*) that the full record is not only physically but legally before the Court with full power to direct such disposition of the cause as the Circuit Court of Appeals might have done; (*b*) that, whether the Court will consider all the grounds of objection to the judgment below or confine itself to those only which are alleged in the petition for certiorari, is a matter of the Court's discretion in the particular case; and (*c*), that as a rule the Court will pass on all the questions presented by the record so that its mandate when it goes down will be finally determinative of the controversy. We would also call the Court's attention to the fact that, unless it now disposes of the objections of the respondents to the judgment of the Circuit Court of Appeals, its mandate is not necessarily final. If that judgment should be modified

as to paragraphs (b) and (c) of the Commission's order, the modified judgment would then be the judgment in the Circuit Court of Appeals and the time within which the present respondents might petition this Court for certiorari would run from the entry of the judgment as so modified. On such petition the respondents would not be precluded as to their objections to the judgment in respect to paragraphs (e), (g) and (h) of the order unless this Court had already passed on those objections; and the Court would have to consider then the very objections which it has the power to consider and determine now. *Klauber* v. *San Diego, etc., Co.,* 98 Cal. 105; *Lambert* v. *Bates,* 148 Cal. 146; *Adkins* v. *Children's Hospital,* 261 U. S. 525.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The Federal Trade Commission made an order requiring respondents to cease and desist from certain methods of competition in interstate commerce found to be in violation of § 5, of the Federal Trade Commission Act of September 26, 1914, c. 311, 38 Stat. 717. 7 Federal Trade Commission Decisions 155. The order contains eight paragraphs designated by letters (a) to (h) inclusive. The respondents brought (b), (c), (e), (g) and (h) under review in the Circuit Court of Appeals. The first two were set aside, paragraph (e) was modified, and the last two were allowed to stand. 4 F. (2d) 457. This court granted certiorari (268 U. S. 684) on petition of the commission, which asks reversal of the decree as to paragraphs (b) and (c). No petition has been filed by respondents.

The facts were stipulated; and those here material are: Dealers in paper in each of the five principal jobbing centers in the States on the Pacific Coast have a local association. These centers are Seattle and Tacoma taken as one, Spokane, Portland, San Francisco and Los Angeles.

And there is a general association known as the Pacific States Paper Trade Association whose members are the paper dealers in these centers including most but not all of the members of the local associations, and some who do not belong to a local association. The respondents in this case are the five local associations, the general association, and their members.

The territory served by the members of each local association, while loosely defined, is that naturally tributary to the center where the members are located. The territory of Seattle and Tacoma is the northwestern part of Washington and Alaska; that of Spokane is eastern Washington, northern Idaho and western Montana; that of Portland is Oregon, southerly Washington and part of southern and western Idaho; that of San Francisco is the north half of California, a small portion of southern Oregon, and part of Nevada; and that of Los Angeles is the south half of California and part of Nevada and Arizona. A majority of the dealers in the Pacific Coast States are members of the associations, and they have 75 per cent. of the business in paper and paper products, exclusive of roll news paper, which for the most part is not handled by them.

Each local association distributes uniform price lists to its members to be observed in its territory within the State. The secretary of each is authorized to investigate complaints against members to determine whether they sell below the established prices; and three of the associations authorize the imposition of heavy fines on members for making such sales.

The Spokane Association in its list of prices established for Washington printed " suggested prices " for sales to purchasers in Idaho and western Montana, and there was a tacit or implied understanding that the prices suggested would be observed.

And these association lists are habitually carried and used by the salesmen of members in quoting prices and

making sales outside the State. No association has any requirement that such price lists be observed outside the State; and the quoting of, or the making of sales at, lower or different prices in such territory is not d emed an infraction of rules or trade regulations by reason of which any jobber or wholesaler may complain.

Among the prices fixed by each local association for sales by its members within the State where they are located are prices on what are called " mill shipments." These are sales or orders not requiring immediate delivery and capable of being filled by shipment from the place of manufacture. They include less than carload lots and also carload lots. The former are combined with other paper to make a carload which is shipped to the whole' saler as a single consignment. At destination the delivery is taken by the wholesaler and the portion intended for the purchaser is turned over to him. The carload shipments are made on directions specifying as the point of destination the place where delivery is to be made from the wholesaler to the purchaser. In some cases the wholesaler, in other cases the purchaser, is named as consignee. When so named the wholesaler either takes delivery and turns over the shipment to the purchaser or endorses the bill of lading to the purchaser who then receives the paper directly from the carrier. Where named as consignee, the purchaser takes delivery. In all cases the wholesaler orders the paper from the mill and pays for it. There is no contractual relation between the manufacturer and the purchaser from the wholesaler. These shipments are made from mills within and also from those without the State covered by the agreement fixing prices.

The commission in its findings substantially follows the stipulated facts, and, from them it draws certain inferences or conclusions. Referring to the prices fixed by the local associations, the commission said the habitual carrying and use of such price lists by member jobbers in

quoting prices and making sales outside the State, have a natural tendency to and do limit and lessen competition therein, and the result of such practice is fixed and uniform prices for such products within such territories. As to mill shipments, the commission finds the facts in accordance with the stipulation, and concludes that mill shipments from points outside the State to or for purchasers within the State are in interstate commerce until delivered to the purchaser, and that the inclusion of fixed and uniform prices for such sales in the price lists of the associations eliminates price competition.

Paragraph (b) of the commission's order is to prevent the local associations, their officers and members, separately or in combination, from using any price list fixed by agreement between wholesalers in soliciting or selling in interstate commerce, and from making and distributing any such price list intended for use in making such sales. Paragraph (c) prohibits making or acting under agreements fixing prices on mill shipments when the paper sold is shipped from outside the State where the wholesaler is located, and the making or distributing of price lists to be used for making such sales.

The Circuit Court of Appeals held that the stipulated facts do not sustain the commission's finding that the use of association prices by members outside the State where they are located has a tendency to lessen competition and to fix uniform prices in such territories. The validity of the inference or conclusion drawn by the commission and of this part of the order depends upon the proper estimation of the facts stipulated. The language specifically relating to such use of the agreed prices if considered alone might possibly be deemed insufficient. But the commission is not confined to so narrow a view of the case. That part of the stipulation properly may be taken with all the admitted facts and the inferences legitimately to be drawn from them.

The members of the associations dominate the paper trade in question. They are organized to further common purposes. They limit competition in intrastate trade by adherence to uniform prices fixed by agreements through combination. The facts admitted show a strong purpose and much diligence to that end. And some of their activities are for like purpose and have the same effect in the field of interstate commerce. Suggested prices for Idaho and Montana were sent out with the Spokane lists. There was an understanding that such prices would be followed. Mill shipments, whether shipped from within or from without the State, are subject to the agreed prices. From the standpoint of respondents, restraint upon price competition in their interstate commerce is as desirable as in their business local to the States. In both classes of business, they are stimulated by the same motive to lessen competition. All the salesmen while in intrastate territory are required to sell at prices fixed by agreement. And, when across the state line in interstate territories, they use the agreed lists in quoting prices and making sales. It does not appear whether the prices so fixed are adhered to in interstate business. The fact that there is no established rule that the lists shall be followed in taking orders for interstate shipments or that the quoting of lower prices is an infraction for which complaint may be made is not controlling in favor of respondents. An understanding, express or tacit, that the agreed prices will be followed is enough to constitute a transgression of the law. No provision to compel adherence is necessary. It would appear difficult for these jobbers to maintain a uniform price list in the State while making sales across the line at different and competing prices. The effective combination to restrain price competition on one side of the state line is not consistent with the absence of such restraint on the other. The organized maintenance of uniform prices in business local

to the States lends probative significance and weight to facts pointing in the direction of like restraint in the interstate territories. The use of the association prices by all the salesmen in making sales in interstate territories is not necessarily to be regarded as coincidence. There is ample ground for saying that such use results from the admitted combination. The failure of the stipulation to contain any direct statement on the subject does not require it to be found that salesmen are free to depart from the prices furnished them, or that the list used by one differs or may differ from that used by others in the same locality.

The weight to be given to the facts and circumstances admitted, as well as the inferences reasonably to be drawn from them, is for the commission. Its conclusion that the habitual use of the established list lessens competition and fixes prices in interstate territory cannot be said to be without sufficient support. Paragraph (b) does not go beyond what is justified by the findings. It is valid.

Paragraph (c) applies only to mill shipments from one State to another. For the consummation of a transaction involving such a shipment, two contracts are made. The first is for sale and delivery by wholesaler to retailer in the same State. The seller is free to have delivery made from any source within or without the State. The price charged is that fixed by the local association. The other contract is between the wholesaler and the manufacturer in different States. There is no contractual relation between the manufacturer and retailer. By the shipment of the paper from a mill outside the State to or for the retailer, the wholesaler's part of the first contract is performed. The question is whether the sale by the wholesaler to the retailer in the same State is a part of interstate commerce where, subsequently at the instance of the seller and to perform his part of the contract, the paper is shipped from a mill in another State to or for

the retailer. "Commerce among the States is not a technical legal conception, but a practical one, drawn from the course of business." *Swift and Company* v. *United States,* 196 U. S. 375, 398. And what is or is not interstate commerce is to be determined upon a broad consideration of the substance of the whole transaction. *Dozier* v. *Alabama,* 218 U. S. 124, 128. Such commerce is not confined to transportation, but comprehends all commercial intercourse between different States and all the component parts of that intercourse. And it includes the buying and selling of commodities for shipment from one State to another. *Dahnke-Walker Co.* v. *Bondurant,* 257 U. S. 282, 290; *Lemke* v. *Farmers Grain Co.,* 258 U. S. 50, 55. The absence of contractual relation between the manufacturer and retailer does not matter. The sale by the wholesaler to the retailer is the initial step in the business completed by the interstate transportation and delivery of the paper. Presumably the seller has then determined whether his source of supply is a mill within or one without the State. If the contract of sale provided for shipment to the purchaser from a mill outside the State, then undoubtedly it would be an essential part of commerce among the States. *Sonneborn Bros.* v. *Cureton,* 262 U. S. 506, 515. Clearly the absence of such a provision does not affect the substance of the matter when in fact such a shipment was contemplated and made. Cf. *Dozier* v. *Alabama, supra; Western Union Tel. Co.* v. *Foster,* 247 U. S. 105, 113; *Lemke* v. *Farmers Grain Co., supra,* 55. The election of the seller to have the shipment made from a mill outside the State makes the transaction one in commerce among the States. And on these facts the sale by jobber to retailer is a part of that commerce.

The lower court cites and quotes from *Ware and Leland* v. *Mobile County,* 209 U. S. 405. Respondent cites *Moore* v. *N. Y. Cotton Exchange,* 270 U. S. 593, and asserts that it is identical with the last mentioned case and with the

one now before us. In the *Ware and Leland* case, brokers at their office at Mobile, Alabama, took orders from customers to buy and sell contracts for future deliveries of cotton and grain and sent the orders to another office of theirs for execution on an exchange or board of trade in New York, New Orleans or Chicago. Such contracts were for the most part closed out by sale or purchase of other contracts necessary to cover them. No actual deliveries were made except in a few instances; and then they were made outside Alabama at the place where the orders were sent for execution. Deliveries, if any, of cotton purchased for a customer were made to the brokers at the places where the exchanges are located. When the Mobile office of brokers made delivery of cotton on the sale of a future for a customer, the cotton was shipped by the customer from Alabama to the place of sale and there delivered through the brokers to the buyer. Delivery of grain on such contracts, when required, was made at Chicago. In the *Moore* case, the contracts considered were between members of the exchange made for the purchase or sale of cotton for future delivery; the cotton was represented by warehouse receipts issued by a licensed warehouse in New York and was deliverable from the warehouse. The transactions on exchanges and boards of trade, which were considered in these cases, are essentially local in character. It was well understood that they might be closed out without any delivery. And, while for the most part if not wholly, the cotton and grain deliverable under these contracts originated in other States and had theretofore been transported in interstate commerce, it was not contemplated by the parties, seller or buyer, that delivery would be made while the commodity remained in such commerce. It would be a mere chance if any such transaction should be completed by delivery of the commodity while still the subject of commerce among the States.

When regard is had to the facts and known course of business, it is quite clear that the transactions considered in these cases are essentially different from the mill shipments now before us.

And, as the contracts between the wholesaler and the retailer constitute a part of commerce among the States, the elimination of competition as to price by the application of the uniform prices fixed by the local associations was properly forbidden by the order of the commission. Paragraph (c) is valid.

Respondents, notwithstanding their failure to petition for certiorari, now ask for reversal of that part of the decree which leaves in force part of paragraph (e) and paragraphs (g) and (h). This court has the same power and authority as if the case had been carried here by appeal or writ of error. A party who has not sought review by appeal or writ of error will not be heard in an appellate court to question the correctness of the decree of the lower court. This is so well settled that citation is not necessary. The respondents are not entitled as of right to have that part of the decree reviewed. *Hubbard* v. *Tod,* 171 U. S. 474, 494; *French Republic* v. *Saratoga Vichy Co.,* 191 U. S. 427, 440; *Alice State Bank* v. *Houston Pasture Co.,* 247 U. S. 240, 242. Cf. *Hamilton Shoe Co.* v. *Wolf Brothers,* 240 U. S. 251, 257. And, assuming power, we are not moved by any persuasive consideration to examine the parts of the commission's order to which respondents object.

*That part of the decree which sets aside paragraphs (b) and (c) of the commission's order is reversed.*