EXCELSIOR LABORATORY, Inc. v. FEDERAL TRADE COMMISSION.

No. 76, Docket 21059.

United States Court of Appeals
Second Circuit.

Dec. 20, 1948.

---

[6] 2 Cir., 132 F.2d 665.
[7] 2 Cir., 132 F.2d 665.

[8] 2 Cir., 85 F.2d 579.

Frank & Frank, of New York City (David Frank, of New York City, of counsel), for petitioner.

W. T. Kelley, Gen. Counsel, James W. Cassedy, Asst. Gen. Counsel, and A. B. Hobbes, Sp. Atty., all of Washington, D. C., for respondent.

Before SWAN, CHASE and FRANK, Circuit Judges.

CHASE, Circuit Judge.

After due notice and hearings, the Federal Trade Commission found upon adequate evidence that the petitioner manufactured at its plant on Staten Island in New York a product which it sold and distributed in interstate commerce as "Gosewisch's Odorless Garlic Tablets" by means in part of advertisements in newspapers and periodicals published in various states. By these advertisements, and otherwise, the petitioner represented that the use of the tablets was an effective treatment for the effects of high blood pressure, including symptoms of dullness, tiredness, nervousness, dizziness and involuntary naps. The therapeutic value of the garlic in tablets as a remedy for such disorders was emphasized together with the opportunity the use of these tablets afforded to obtain the benefit of garlic treatment without fear of having an offensive breath.

The Commission also found upon undisputed evidence, which the petitioner contends was nevertheless inadequate, that the tablets contained but a negligible amount of garlic and that garlic has no therapeutic value in the treatment of high blood pressure or its symptoms.

It ordered the petitioner forthwith to cease and desist from:

"1. Disseminating or causing to be disseminated by means of the United States mails or by any means in commerce, as 'commerce' is defined in the Federal Trade Commission Act, any advertisement which:

"(a) Represents, directly or by implication, that respondent's preparation possesses any therapeutic value in the treatment of high blood pressure or the symptoms thereof, or any other pathological condition;

"(b) Represents, directly or by implication, that garlic possessed any therapeutic value in the treatment of high blood pressure or the symptoms thereof;

"(c) Uses the word 'Garlic' or any other word of similar import in the product name of any preparation not containing a substantial quantity of garlic; or otherwise uses the word 'Garlic' or any simulation thereof in such manner as to represent or imply when such is not the fact, that a preparation contains garlic in substantial quantity.

"(2) Disseminating or causing to be disseminated any advertisement by any

means for the purpose of inducing or which is likely to induce, directly or indirectly, the purchase of respondent's preparation in commerce, as 'commerce' is defined in the Federal Trade Commission Act, which advertisement contains any representation prohibited in paragraph 1 (a), 1(b), or 1(c) above."

Thereupon this petition was duly filed to review and set aside the order. The Commission has opposed the petition and requested its affirmance and enforcement as provided in § 5(c) of the Federal Trade Commission Act, 52 Stat. 112, 15 U.S.C.A. § 45(c).

 It is familiar law that the findings of the Commission are conclusive if there is substantial support for them· in the evidence. Benton Announcements, Inc. v. Federal Trade Commission, 2 Cir., 130 F.2d 254. Moreover, reasonable inferences drawn from facts found on substantial evidence are adequate to support findings. Federal Trade Commission v. Pacific States Paper Trade Ass'n, 273 U.S. 52, 63, 47 S.Ct. 255, 71 L.Ed. 534. And when there is room for choice among reasonable inferences which may be drawn the Commission may make the choice which in its best judgment should be made. Phelps Dodge Refining Corp. v. Federal Trade Commission, 2 Cir., 139 F.2d 393, 395; National Labor Relations Board v. Nevada Consolidated Copper Corp., 316 U.S. 105, 62 S.Ct. 960, 86 L.Ed. 1305.

The problem here presented is, therefore, not so much one of law as one of fact and we shall go directly to the record to see what evidence there was to support the findings.

A chemist, Dr. Wright, who had been employed by the government continuously since 1912 "mostly on the analysis of drugs and related products" distilled with steam two hundred of the tablets, the average weight of each being 0.609 of a gram, and found that the distillate contained less than 0.0003 of a gram of garlic oil. The remainder consisted of substances other than garlic oil, and for the most part of sucrose; the residue insoluble in water was 0.34%. He testified that this amount of garlic oil in two hundred tablets showed that the average garlic oil content of each tablet was 1.5 millionth of a gram.

Another chemist who had been employed by the government since 1937 examining food and drug products to determine their content received from Dr. Wright three of the whole tablets and the residue of solids insoluble in water left when Dr. Wright made his analysis. This second chemist made a microscopic examination of this residue and found that it "consisted of insoluble siliceous particles and a small amount of plant tissues closely resembling garlic." He testified that the identification of these plant tissues could not be more definite "because the particles were so scarce." Also that the "amount of plant tissues in the tablet was extremely small compared to the bulk of the tablet."

A doctor of medicine who had been employed in the United States Public Health Service since 1923 as a pharmacologist studying the action of drugs on health and disease testified that he was familiar with the garlic tablets of the petitioner. He testified that in the treatment of disorders caused by an above normal increase of blood pressure garlic had been used and years ago was thought to be beneficial. Modern controlled scientific tests had, however, shown otherwise. When asked whether the quantity of garlic or garlic oil in these tablets was of any therapeutic value he testified, "It would be too small to be of any pharmacological action in any dose that you could give of the tablet. Even if the dose were a hundred times greater however, I would feel that there would· be no therapeutic value to be expected from the extract."

 These witnesses were qualified experts. Cross-examination of them left this positive testimony unretracted and the petitioner did not offer any evidence at all. The Commission was free to believe and base findings upon it as it did. It, with the other evidence in the record was, if believed, undoubtedly sufficient to support findings which the Commission made to the effect that petitioner's advertisements were "erroneous, and misleading and * * * false" and that the use of "Garlic" on the name of the tablets was a representation

that there was a substantial amount of garlic in their content. That being so, the findings are to be given effect. They show that it was deceptive to use the word "garlic" as a distinguishing part of the name of the preparation and the Commission was justified in forbidding its use unless the garlic content was increased to a substantial amount. Even if the descriptive part of the petitioner's trade-name and advertising had been accurate the ascription of therapeutic properties would have been deceptive and its prohibition justified.

Petition to set aside the order denied and prayer for its enforcement granted.