**LOUISVILLE AND NASHVILLE RAIL-
ROAD CO., Plaintiff,**

and

**The Baltimore and Ohio Railroad Co.,
Intervening Plaintiff,**

v.

**UNITED STATES of America,
Defendant,**

and

**Chicago, Milwaukee, St. Paul and Pa-
cific Railroad Company, et al.,
Intervening Defendants.**

**Civ. A. No. 7554–B.**

United States District Court,
W. D. Kentucky,
Louisville Division.

May 10, 1973.

Richard B. Allen, Baltimore, Md., for intervening plaintiff, Baltimore & Ohio Railroad Co.

Joseph E. Stopher, Boehl, Stopher, Graves & Deindoerfer, Fred R. Birkholz, Louisville, Ky., for plaintiff, Louisville & Nashville R. R. Co. and intervening plaintiff, Baltimore & Ohio R. R. Co.

Albert F. Reutlinger, Louisville, Ky., for intervening plaintiff, Kentucky & Indiana Terminal R. R. Co.

George J. Long, U. S. Atty., Louisville, Ky., John H. D. Wigger, Dept. of Justice, Washington, D. C., for defendant, U.S.A.

Raymond M. Zimmett, Interstate Commerce Com., Washington, D. C., for I.C. C.

Bert T. Combs, Louisville, Ky., for intervening defendants, Chicago, Milwaukee, St. Paul & Pacific R. R. Co., and Southern Railway Co.

Raymond K. Merrill, Thomas H. Ploss, Chicago, Ill., for Chicago, Milwaukee, St. Paul & Pacific R. R. Co.

R. Allan Wimbish, Gary F. Eubanks, Washington, D. C., for Southern Railway Co.

Emil J. Mueller, Pierre, S. D., for Public Utilities Commission of South Dakota, intervening defendant.

Slade Gorton, Atty. Gen., Wash., Olympia, Wash., for Wash. Utilities & Transp. Commission, intervening defendant.

Before PHILLIPS, Circuit Judge, and BRATCHER and ALLEN, District Judges.

BRATCHER, District Judge.

This action was brought before this three-judge court to review the decision and order of Division 3 of the Interstate Commerce Commission (Commission), dated January 8, 1973, in proceedings designated as *Finance Docket No. 26525, Chicago, Milwaukee, St. Paul and Pacific Railroad Co.—Trackage Rights—Louisville and Nashville Railroad Co. and Kentucky & Indiana Terminal Railroad Co.; Finance Docket No. 26526, Chicago, Milwaukee . . . ,—Assumption of Obligation and Liability; and Finance Docket No. 26887, Chicago, Milwaukee, . . . —Joint Use of Terminal, Louisville, Kentucky,* wherein Division 3 of the Commission affirmed and adopted the recommended report and order of Administrative Law Judge Paul J. Clerman approving and authorizing the acquisition by Chicago, Milwaukee, St. Paul & Pacific Railroad Company (Milwaukee) of trackage rights over a line of railroad of L&N between Bedford, Indiana and New Albany, Indiana, as well as prescribing the terms and conditions for such trackage rights. In Finance Docket No. 26526, Milwaukee was permitted to withdraw its application for authority to become, as an owner, a joint and several guarantor of certain securities of Kentucky and Indiana Terminal Railroad Company (K&IT); and in Finance Docket No. 26887, Division 3 of the Commission affirmed and adopted the recommended report and order of the Administrative Law Judge requiring that Milwaukee be permitted to use as a tenant the terminal facilities of K&IT and prescribing the terms and conditions for such use.

Jurisdiction is vested in this Court pursuant to Section 17(9) of the Interstate Commerce Act [49 U.S.C. § 17(9)], under §§ 1336, 1398, 2284 and 2321–2325 of the United States Judicial Code [28 U.S.C. §§ 1336, 1398, 2284, 2321—2325], and §§ 701–706 of the Administrative Procedure Act [5 U.S.C. §§ 701–706].

Plaintiff is a corporation organized and existing under the laws of the State

of Kentucky and has its principal place of business at Louisville, Kentucky. L&N is a common carrier by railroad subject to the Interstate Commerce Act and operates in thirteen states, primarily in the southeastern part of the United States.

As required by law, 28 U.S.C. § 2322, the United States of America was named a defendant. Subsequent to the filing of the action and pursuant to the rights created by 28 U.S.C. § 2323, Southern Railroad Company (Southern), Milwaukee, the Interstate Commerce Commission, Public Utilities Commission of South Dakota, and Washington Utilities and Transportation Commission were permitted to intervene as defendants in the action. The Baltimore and Ohio Railroad Company (B&O) was permitted to become an intervening plaintiff insofar as the action asserts claims affecting the rights of B&O and the other owners of K&IT.

After a careful review of the entire record, including the complaint and motions, documents and exhibits, and after having heard oral arguments of respective counsel, and having considered the extensive briefs filed by all interested parties, it is abundantly clear that the complaint should be dismissed. For the reasons more fully discussed herein, it is held that the Commission's findings are supported by substantial evidence.

This case had its beginning in September, 1968, when L&N filed with the Commission an application under Section 5(2) of the Interstate Commerce Act, 49 U.S.C. § 5(2), for authority to merge into L&N the properties and franchises of Monon Railroad, an Indiana corporation. As pertinent here, Monon operated between Louisville and Chicago, whereas L&N operated between Louisville and the southern region of the United States. Thus, the merger would allow L&N to operate between Chicago and the south via Louisville.

During the Commission hearings evidence was introduced that Southern Railway, a competitor of L&N throughout an extensive area in the south, had been interchanging traffic with Monon at Louisville, just as L&N had done. Southern contended that as a result of the merger, it would now have great difficulty interchanging traffic at Louisville, and would therefore suffer traffic diversion losses of over $900,000.00 per year.

Milwaukee Railroad, which operates north of Louisville between Bedford, Indiana and Chicago and points west thereof, showed that it had participated to some extent in the traffic that Southern formerly interchanged with Monon at Louisville. It was further shown by Milwaukee that as a result of the merger, L&N would now be in a position to dominate two of the three major points termed "gateways" where rail carriers interchange traffic moving between Chicago and the south. The first gateway, Evansville, Indiana, was already controlled by L&N. The second gateway, Louisville, would now be controlled by L&N, thereby threatening to shut out Milwaukee's participation in any through traffic moving between Chicago and the south.[1]

Milwaukee and Southern based on the aforementioned evidence, asked the Commission to condition its approval of the L&N-Monon merger upon the initiation of a joint Milwaukee-Southern service via Louisville to compete with L&N's new single-line services resulting from the merger.

There was wide public support at the hearings for the Milwaukee-Southern proposal. Eleven (11) state regulatory commissions, i. e., South Carolina, Idaho, Illinois, Iowa, Minnesota, Michigan, Montana, North Dakota, South Dakota, Washington, and Wisconsin, the city of Terre Haute, Indiana, and forty-four (44) shippers expressed a need for such

---

1. The Court realizes that Penn Central is a competitor of the Monon route between Louisville and Chicago, but believes that despite this fact, L & N would dominate the Louisville gateway in view of its ability to provide through service between Chicago and points in the south.

coordinated rail service since it would improve and expedite the transportation of freight. Witnesses supporting the Milwaukee-Southern proposal stressed that such joint operations were vital to safeguard the industries and communities that were dependent upon Milwaukee and Southern for service.

In September, 1970, the Commission issued its order authorizing the merger of Monon and L&N, subject to conditions, among them those requested by Milwaukee and Southern with respect to gaining entry into Louisville. As the Commission expressly held:

"Our principal purpose in granting the Milwaukee trackage rights request is to provide for a new competitive route between southern points and Chicago. Heretofore a large, rapidly growing area of the South has been served through interline arrangements at the several gateways, including Evansville, Louisville and Cincinnati. For a substantial part of the area, the route via Louisville provides the most direct access to and from Chicago; and many shippers and localities therein are wholly dependent upon Southern for rail transportation, while others have available both L&N and Southern. Under these circumstances, absolute domination of the Louisville gateway would accord L&N an undue competitive edge which could be used to the detriment not only of the Southern but also the shippers, industries, and localities it serves. A proficient Milwaukee-Southern route would tend to offset such anticompetitive effects. In addition, the improved service and widened market area such a route could provide should foster the development of the territory along the Milwaukee-Terre Haute division in much the same way as we anticipate L&N's service will affect the territories of the Evansville line and the Monon. Moreover, we look to the availability of the service between the Milwaukee-Southern combination to stand as a deterrent to any letdown by L&N after gaining control of the two

lines (Monon and Evansville) which previously were to some degree competitors." See 388 ICC at 158.

The Commission further found that in order to implement the condition, Milwaukee would have to obtain trackage rights over tracks that L&N would own either individually or jointly as a result of the merger. The largest segment of that trackage, between Bedford and New Albany, Indiana, would be owned by L&N alone. The remaining stub, consisting of terminal facilities with trackage between New Albany and Louisville, (a distance of 2.6 miles) is held by K&IT. That railroad is owned by three roads: L&N, as a result of the merger, Southern and B&O.

Accordingly, the Commission imposed a set of duties upon L&N, all of which were calculated to secure Milwaukee's access to Louisville. These duties were set forth in the "Terms and Conditions" section of the decision, and were designated Condition No. 3. These conditions are as follows:

"(a) L&N shall grant Milwaukee trackage rights over the line of the present Monon between the point of connection of Milwaukee and Monon at Bedford, Ind., and the end of Monon's line at New Albany, Ind., upon reasonable terms (including a reasonable arrangement for the protection of railway employees adversely affected by paragraphs (a), (b), (c), and (d) of this condition) agreed to by the parties, subject to the Commission's approval, or upon reasonable terms prescribed by the Commission should L&N and Milwaukee fail to agree upon such terms;

(b) L&N, upon reasonable terms agreed to by L&N and Milwaukee, or upon reasonable terms prescribed by the Commission should L&N and Milwaukee fail to agree, shall consent to the sale to Milwaukee of a one-fourth interest in K&IT by the present three owners thereof or their successors;

(c) L&N shall, upon reasonable terms agreed to by L&N and Milwau-

kee, or upon reasonable terms prescribed by the Commission should L&N and Milwaukee fail to agree upon such terms, consent to the grant of trackage rights to Milwaukee over K&IT between New Albany, Ind., and Youngstown Yard of K&IT in Louisville, and of the same kind of rights as Monon may have at present with respect to operations over, or use of, the facilities of K&IT;

(d) L&N shall cooperate with Milwaukee in obtaining all necessary consents and conveyances, including consents and conveyances by other owners of K&IT with respect to the aforesaid sale and trackage rights requested by Milwaukee;

(e) The Commission shall retain jurisdiction over these proceedings to insure the orderly and expeditious implementation of this condition."

As can be seen Condition 3 required L&N to grant trackage rights to Milwaukee and the terms and compensation for the use of the two segments of trackage to be negotiated thereafter by the parties. The Commission also expressly retained jurisdiction to resolve any disputes that might arise concerning the terms and compensation for Milwaukee's use of the said tracks.

Retention of jurisdiction by the Commission clearly demonstrates that it had the vision and foresight to perceive that certain insurmountable obstacles might arise between L&N and Milwaukee when they commenced their negotiations for the trackage rights.

In retrospect, it is obvious that when the Commission was subsequently petitioned to and did authorize terms and conditions different from those contained in Condition 3 (as more detailed below), it was not reacting to a new stimulus, or acting prematurely or in a manner designed to bestow a favor on Milwaukee.

On November 1, 1971, some three months after L&N had consummated the merger and commenced its single-line service, Milwaukee applied to the Com-

mission to prescribe the terms and compensation for its use of the L&N trackage between Bedford and New Albany, and also to prescribe the terms and compensation for its use of that trackage between New Albany and Louisville. Stating that its negotiations with the other parties had failed and that it was no longer possible to purchase an interest in K&IT, Milwaukee sought prompt relief from the Commission so that it could commence its operations without further delay.

Thereafter, the administrative judge found that it was in the public interest for the Commission to order Milwaukee under Section 3(5), 49 U.S.C. § 3(5), to operate over the K&IT between New Albany and Louisville, and to pay a reasonable rental for that use. That operation was found to be practical and would not substantially impair K&IT's ability to handle the business of the three owner roads since Milwaukee would only operate two trains a day.

The administrative judge further prescribed the terms and compensation for Milwaukee's use of the L&N trackage between Bedford and New Albany, deciding some issues in L&N's favor and others in Milwaukee's favor. The order further directed the parties to negotiate and to prepare an agreement concerning terms and compensation subject to the Commission's ultimate approval. Finally, the administrative judge concluded that the proceedings did not constitute a "major federal action significantly affecting the quality of human enviornment 'within the meaning of the National Environmental Policy Act of 1969 (NEPA)'", 42 U.S.C. §§ 4321–4347.

After exhausting all administrative remedies, L&N and B&O have instituted this action to review the decision of the Commission.

This Court has jurisdiction of the parties and the subject matter in this cause. 28 U.S.C. §§ 1336, 1398; 5 U.S.C. § 706.

■ Under Section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706, the scope of this Court's review of the instant order of the Commission is limited to determining whether the order is arbitrary or in accordance with the law and whether the Commission's findings are supported by substantial evidence. Louisville and Nashville Railroad Co. v. United States, 268 F.Supp. 71, 75 (W.D.Ky., 1967), reversed on other grounds sub nom. American Commercial Lines, Inc. v. Louisville & N.R.Co., 392 U.S. 571, 88 S.Ct. 2105, 20 L.Ed.2d 1289 (1968).

■ In determining whether the findings of the Commission challenged by plaintiffs are arbitrary or capricious or unsupported by substantial evidence, the Court is not free to substitute its judgment for that of the Commission as to the weight of the evidence or the inferences to be drawn from the evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Illinois Central R. Co. v. Norfolk & Western R. Co., 385 U.S. 57, 69, 87 S.Ct. 255, 17 L.Ed.2d 162; Consolo v. Federal Maritime Commission, 383 U.S. 607, 619–620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); Corn Products Refining Co. v. FTC, 324 U.S. 726, 739, 65 S.Ct. 961, 89 L.Ed. 1320 (1945); FTC v. Pacific States Paper Trade Ass'n, 273 U.S. 52, 63, 47 S.Ct. 255, 71 L.Ed. 534 (1927); 4 Davis, Administrative Law § 29.05 (1958).

■ The Commission's report and order of September 9, 1970, 338 I.C.C. 134, which granted the merger subject to the condition that Milwaukee be granted certain trackage rights from Bedford, Indiana to Louisville, are, in the opinion of this three-judge panel, supported by substantial evidence.

In reaching this conclusion, we are constrained to follow the concept so succintly stated in the case of Railway Labor Executives Association v. United States, D.C., 226 F.Supp. 521, wherein the Court stated:

"The Commission is free in its discretion to make different findings, to reach different conclusions, and to impose different conditions predicated upon its evaluation of the facts of record relating to each individual transaction, so long as it does not fail to meet the minimum statutory criteria and is fair and equitable."

See also the case of L&N Railroad Company v. United States, 244 F.Supp. 337, (W.D.Ky., 1965) which is a case emanating from our own district wherein the writer of the opinion, Judge Shelbourne, quoted as follows from the case of Minneapolis and St. Louis Railroad Co. v. United States, 361 U.S. 173, 80 S.Ct. 229, 4 L.Ed.2d 223:

"Resolution of the conflicting considerations 'is a complex task which requires extensive facilities, expert judgment and considerable knowledge of the transportation industry. Congress left that task to the Commission "to the end that the wisdom and experience of that Commission may be used not only in connection with this form of transportation, but in its coordination of all other forms." 79 Cong.Rec. 12207. "The wisdom and experience of that commission," not of the courts, must determine whether the proposed [acquisition] is "consistent with the public interest." ' "

L&N's principle contention is that Milwaukee refused to (1) purchase an interest in the K&IT facility and (2) pay the rent asked for by L&N for the Bedford to New Albany trackage. Thus, it violated the terms and conditions of the agreement by not negotiating to a final settlement. It is further argued that the Commission modified Condition 3 in its order of August 4, 1972, with respect to leasing trackage rights over

K&IT rather than Milwaukee purchasing a one-fourth interest in same.

In that order, the Commission's administrative judge considered the merger and Condition 3 and stated in part:

" . . . the only obligation imposed therein upon Milwaukee, however, was the tacit obligation to negotiate in good faith on reasonable terms for the trackage rights and purchase provided therein. Nothing in Condition No. 3 or elsewhere in the merger report made the performance by L&N of the several acts required of it contingent in any way upon any other acts to be performed by Milwaukee, and it necessarily follows that no act or failure to act on the part of Milwaukee can serve to relieve L&N of any of the latter's obligations under Condition No. 3. . . . Milwaukee is, in effect, simply the instrument of the Commission's policy to counter anticompetitive effects of the merger otherwise approved and authorized."

L&N's contentions are completely unfounded. First, from the above language, it is apparent that the primary purpose of Condition 3 was to create competition for the newly formed L&N-Monon line. Secondly, as heretofore mentioned, the Commission expressly retained jurisdiction over the negotiations knowing full well that a problem in negotiations could, and in fact did, arise. With the Commission's primary purpose in mind, and the fact the negotiations over the purchase price of the K&IT facility were at a deadlock, the Court concludes that the Commission's finding with respect to the order and decisions of Division 3 of the I.C.C. is neither arbitrary nor capricious.

The Commission's finding which prescribed certain terms for Milwaukee's rental of L&N's Bedford-New Albany line and K&IT facility (Finance Docket No. 26515), and that L&N and Milwaukee should negotiate further towards a reasonable rental concerning the K&IT facility rather than a purchase price, was based on the statutory authority provided in Section 3(5) of the Interstate Commerce Act, 49 U.S.C. § 3(5). Section 3(5) provides in part:

"If the Commission finds it to be in the public interest and to be practicable, without substantially impairing the ability of a common carrier by railroad owning or entitled to the enjoyment of terminal facilities to handle its own business, it shall have power by order to require the use of any such terminal facilities, including main-line track or tracks for a reasonable distance outside of such terminal, of any common carrier by railroad, by another such carrier or other such carriers, on such terms and for such compensation as the carriers affected may agree upon, *or, in the event of a failure to agree, as the Commission may fix as just and reasonable for the use so required, to be ascertained on the principle controlling compensation in comdemnation proceedings.* Such compensation shall be paid or adequately secured before the enjoyment of the use may be commenced." (Emphasis added.)

Section 5(2)(b) and 5(9) of the Interstate Commerce Act, 49 U.S.C. §§ 5(2)(b), 5(9), further provide in pertinent part, respectively:

"If the Commission finds that, subject to such terms and conditions and such modifications as it shall find to be just and reasonable, the proposed [merger] transaction . . . will be consistent with the public interest, it shall enter an order approving and authorizing such transaction, upon the terms and conditions, and with the modifications, so found to be just and reasonable. . . .

\* \* \* \* \* \*

The Commission may from time to time, for good cause shown, make such orders, supplemental to any order made under paragraph . . . (2) . . ., as it may deem necessary or appropriate."

■ With the above statutes in mind, it is clear that the Commission's order was within the statutory powers con-

ferred upon it and in accordance with the law. (See Missouri-K.T.R. Co. v. Kansas City Term. Ry. Co., 198 I.C.C. 4).

 Plaintiffs' eleventh hour argument concerning the quality of human environment with increased usage of the tracks is without merit, in view of the fact Milwaukee proposed to operate only two trains per day and L&N conceded that the line was under-utilized, with adequate unused capacity to handle the two additional trains. The Commission's findings was clearly within the prescribed law. See Scenic Hudson Preservation Conference v. F.P.C., 453 F.2d 463, 468 (2nd Cir., 1971).

Since the findings in the Commission's report and order are supported by substantial evidence, and the Commission's conclusions are fairly drawn from such findings, are not arbitrary and are in accordance with the law, this Court holds that the report and order of Division 3 of the Commission should be and hereby is sustained, and that plaintiffs' complaint should be and hereby is dismissed on the merits with prejudice.