METROPOLITAN BAG & PAPER DIS-
TRIBUTORS ASSOCIATION,
Inc., et al., Petitioners,

v.

FEDERAL TRADE COMMISSION,
Respondent.

HARLEM PAPER PRODUCTS CORPO-
RATION et al., Petitioners,

v.

FEDERAL TRADE COMMISSION,
Respondent.

ROBINS PAPER COMPANY OF BALTI-
MORE CITY, Petitioner,

v.

FEDERAL TRADE COMMISSION,
Respondent.

Nos. 54, 55, 56,
Dockets 23372, 23373, 23676.

United States Court of Appeals
Second Circuit.

Argued Nov. 14, 1956.

Decided Jan. 9, 1957.

As Modified on Denial of Rehearing
in No. 23373 Feb. 18, 1957.

Nathan Frankel, New York City (Barshay & Frankel, New York City, on the brief), for petitioners Metropolitan Bag & Paper Distributors Ass'n, Inc., et al.

Max Wechsler, New York City (Wechsler & Solodar and Albert L. Solodar, New York City, on the brief), for petitioners Harlem Paper Products Corp. et al.

John D. Alexander, Baltimore, Md. (Duer & Taylor, New York City, and Wm. Pepper Constable, Baltimore, Md., on the brief), for petitioner Robins Paper Co. of Baltimore City.

Jno. W. Carter, Jr., Atty., Federal Trade Commission, Washington, D. C. (Earl W. Kintner, Gen. Counsel, and Robert B. Dawkins, Asst. Gen. Counsel, Federal Trade Commission, Washington, D. C., on the brief), for respondent.

Before CLARK, Chief Judge, and FRANK and HINCKS, Circuit Judges.

CLARK, Chief Judge.

These are three petitions to review a cease and desist order of the Federal Trade Commission, each petition being filed by paper merchants who belong to a different local trade association. The Commission's complaint had been directed against the National Paper Trade Association, its officers, 23 affiliated local associations, their officers, and some 941 paper merchant members, and charged them with conspiracy to fix uniform prices and discount terms in the sale and distribution of "fine paper" (printing and book paper, stationery) and "wrapping paper" (wrapping, toilet tissue, towels, drinking cups, etc.), in violation of § 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a).

The Commission found a conspiracy clustering around the efforts of National to (1) issue Blue, Yellow, and Brown (price) Books; (2) keep members' cash discounts uniform, despite a shift in manufacturers' credit terms in 1946; (3) co-operate with regional efforts at price-fixing. For the purposes of this review we must take the main conspiracy, spearheaded by National, as established and have to determine only whether the petitioners, operating somewhat on the periphery, have been properly implicated, i. e., whether as to each petitioner the Commission's finding of participation is supported by the necessary minimum of substantial evidence. Excelsior Laboratory v. F. T. C., 2 Cir., 171 F.2d 484, 486. The chief question is whether there was substantial evidence to link the petitioners to the second and third of National's goals which we have stated. A subordinate question the petitioners attempt to raise is that they were unfairly discriminated against by the Commission's order of dismissal entered in favor of various correspondents.

## I.   The New York City Petitioners

(1) *Metropolitan Bag & Paper Distributors Association, Inc.* Four local trade associations—"New Jersey," "New York," "Cosmopolitan," and "Metropolitan"—engaged in a regional conspiracy to fix prices and credit terms of wrapping paper products from 1934 to the time of the complaint. There were six points of contact between this regional conspiracy and the national one: (1) all four local associations were dues-paying members of the national association; (2) in January 1936 the national group gave information to a regional council composed of three of these local associations engaged in price-fixing; (3) in April 1940 the national group organized a regional council of these four local associations for illegal activities; (4) in November 1943 the president of Cosmopolitan urged its members to pay national dues; (5) in January 1947 Cosmopolitan's Board of Directors discussed writing the national group concerning proposed standardized credit terms; and (6) in 1948 and 1949 officers of Yorkville Paper Company, Inc. (a member of Metropolitan), and A. E. MacAdam & Co., Inc. (another member of Metropolitan), served as officers of the national group, as did an officer of Harlem Paper Products Corporation (a member of Cosmopolitan).

■■ We must accept the inferences drawn by the Commission that (1) the regional council created in 1940 continued in existence until the filing of the complaint; (2) the members of the local councils who had dealings with the national group in 1936, 1940, and 1947 knew of its purposes and joined in the conspiracy to further them; and (3) these local trade associations on continuing to be members of National are to be charged with all they would have learned had they tried to discover what National was doing with their dues and moral support. Phelps Dodge Refining Corp. v. F. T. C., 2 Cir., 139 F.2d 393, 396. Metropolitan Bag & Paper Distributors Association, Inc., as one of these four local trade associations, can thus be found to be a national conspirator.

■ (2) *Yorkville Paper Company, Inc.* This company was a member of Metropolitan in December 1941; and Arthur H. Stein, an officer of Yorkville, was president of Metropolitan at that time. Stein was an officer of the national group for the year 1948–1949, and was a speaker at the 1948 national convention. He was also president of Metropolitan in 1942 when the organization was engaged in efforts at standardizing credit terms in the industry and similar practices. While Stein was Metropolitan's president that group paid at least $750 dues to the national association. Thus there was sufficient proof to link Yorkville to the national conspiracy.

(3) *A. E. MacAdam & Co., Inc.* This corporation was a member of Metropolitan in December 1941, June 1942, and at the time the complaint was filed. It was represented by Alfred E. MacAdam, III, at Metropolitan's meetings of December 1941 and June 1942. In 1941 Alfred E. MacAdam was appointed to Metropolitan's Finance Committee, charged with getting money to cover the expense of national dues and the local credit bureau. MacAdam was chairman of the local credit bureau committee which worked with other local trade associations to establish uniform regional credit terms. MacAdam was a speaker at the 1948 national convention and was a national officer for 1948–1949. Consequently there was enough evidence to connect this corporation with the national conspiracy.

(4) *John H. Free, Inc.* This corporation was a member of Metropolitan in 1941, 1942, and at the time the complaint was filed. It was represented at the December 1941 and June 1942 meetings of Metropolitan where the members discussed paying national dues; forming a credit bureau; distributing resale price tables; and establishing central control over all advertising done by members of Metropolitan.

The Commission could properly infer that this corporation knew the purposes of Metropolitan, knew of Metropolitan's connection with the national conspiracy, and continued to remain a member of Metropolitan and the National Association. John H. Free, Inc., was thus adequately linked to the national conspiracy.

(5) *S. Posner Sons, Inc.* The evidence against this corporate member of Metropolitan is identical with the evidence against John H. Free, Inc.

■■ (6) *Shuttleworth Wollny Co., Inc.* This was another corporate member of Metropolitan, but there is no proof that its representatives attended any meetings, paid any dues, or participated in the activities of Metropolitan or the national group. There is no basis for inferring that the petitioner had any knowledge of Metropolitan's illegal activities. There is no evidence that Metropolitan was a small group, and the probability is that it was large inasmuch as the Commission began the action by naming four persons at random to represent the class of Metropolitan's members. The petitioner is one of the members so selected. Although the petitioner was in the same trade as Metropolitan and would presumably benefit from Metropolitan's illegal acts, the Commission may not infer participation in a conspiracy from mere membership in the trade association without more. Phelps Dodge Refining Corp. v. F. T. C., supra, 2 Cir., 139 F.2d 393, 396.

**(7)** *Fred Free, Jr.* The only evidence against this individual is his admission that he was secretary of Metropolitan at the time the complaint was filed—October 5, 1948. Metropolitan, as indicated previously, was last shown to have participated actively in the national conspiracy in 1940, and the Commission inferred continued participation in it because Metropolitan continued to pay national dues and several officers of Metropolitan's corporate members were national officers in 1948. The Commission argues that active participation in 1948 is shown by Metropolitan's attempt to fix the regional resale price of wrapping paper products in 1941 and National's adoption of that goal on a larger geographical scale in 1947–1948. Such delayed parallel action seems too meager evidence to be probative of conspiracy, even though two officers of Metropolitan's member corporations were officers of the national group for 1948–1949. Without proof of the role of these two officers in the national conspiracy we would hesitate to affirm a finding that Metropolitan was visibly engaged in the national conspiracy at the time when Fred Free became its secretary. Accepting such a finding, *arguendo*, there is still no substantial evidence that Free was a conspirator. Phelps Dodge Refining Corp. v. F. T. C., supra, 2 Cir., 139 F.2d 393, 397. In the Phelps Dodge case we dealt with a "board member" rather than a "secretary," but there is nothing in the present record to suggest that Free knew about Metropolitan's illegal life; and to infer so much from his title is unwarranted.

**(8)** *Harlem Paper Products Corporation.* Harlem was a corporate member of Cosmopolitan—one of the four local trade associations in greater New York City. Mr. David Kasson, a leader in all aspects of restraint of trade in wrapping paper products in this region from 1934 to 1947, represented Harlem in 1948 on the Board of Directors of the National Association. There is sufficient evidence against Harlem.

**(9)** *David Kasson.* There is adequate evidence to connect this individual with the national activities, as well as regional efforts at unfair competition. In 1943 he urged members of Cosmopolitan to pay national dues, and in 1948 he was on the National Association's Board of Directors. He was the moving spirit in local efforts at uniform credit terms in 1941–1942, and he discussed a letter from the National Association in 1947 which dealt with the same topic.

**(10)** *Imperial Bag & Paper Co., Inc.; Daniel W. Margolin d/b/a Liberty Bag & Paper Co.* These two members of Cosmopolitan were selected at random to represent the class of members. The proof against them is identical with that against Shuttleworth Wollny Co., Inc., discussed previously, and is similarly insufficient.

**II. The Baltimore Petitioner; Robins Paper Company**

The sole petitioner from Baltimore is Robins Paper Company, a member of the local Maryland trade association. Maryland was engaged in restraint of trade in 1932 and during the NRA period —1933 through 1936. In 1947–1948 Maryland complied with a request of the National Association, of which it was a member, to submit its minutes to the national group for approval. The Commission is warranted in inferring that the "approval" amounted to censorship and that Maryland and National were then engaged in fixing prices of fine and wrapping paper products. This is borne out by the number of officers of Maryland's members who were on committees of National for 1948–1949.

The record reveals that Robins resigned from Maryland in 1936. In its answer Robins admitted being a member of Maryland at the time the complaint was filed in 1948. There is no evidence that Robins was an active member, paid dues, attended meetings, or had knowledge of Maryland's activities. None of Robins' officers were on the committees of the national trade association. Robins

appears to be a member selected at random to represent the class of members of Maryland. Robins was represented at one meeting of Maryland in 1932 where local illegal trade practices were discussed. It continued membership during NRA days when similar practices were continued with government approval. This knowledge of Maryland's behavior during the depression was not so damning as to put Robins on notice at the time it rejoined the trade association that Maryland might be engaged in a national price-fixing conspiracy; consequently Robins cannot be charged with knowledge of all that diligent inquiry would have revealed concerning Maryland's role in this present conspiracy.

The remaining points raised by the petitioners we find without merit. The findings of the Commission were sufficiently detailed to permit appellate review; and the Commission's decision not to proceed against other conspirators appears to be within its discretion so as to give the present petitioners no ground for complaint on this review.

The order of the Commission on review is set aside as to petitioners Shuttleworth Wollny Co., Inc.; Imperial Bag & Paper Co., Inc.; Daniel W. Margolin d/b/a Liberty Bag & Paper Co.; Robins Paper Company; and Fred Free, Jr. It is affirmed as to the remaining petitioners, and an order of enforcement against them will be entered by us.