RISS & COMPANY, Inc., Plaintiff

v.

ASSOCIATION OF AMERICAN RAIL-
ROADS et al., Defendants.

Civ. A. No. 4056-54.

United States District Court
District of Columbia.

April 3, 1959.

See also, 170 F.Supp. 354.

A. Alvis Layne, Jr., and Lester M. Bridgeman, Washington, D. C., for plaintiff.

Hugh B. Cox and James H. McGlothlin, Washington, D. C., for defendants.

SIRICA, District Judge.

On April 12, 1955, defendants Baltimore and Ohio Railroad, et al., served the plaintiff with certain interrogatories under Rule 33 of the Federal Rules of Civil Procedure, 28 U.S.C.A. The plaintiff answered some of these questions and objected to others. The questions still under objection as of this date fell into two classes. The first group [I A–E 23 (a)–(f)], seeks detailed data as to the pounds of freight handled inbound and outbound by each of plaintiff's truck terminals and the monthly gross revenue received by Riss for traffic handled solely by Riss at each of its terminals. These questions also deal with "interline" traffic; i. e., traffic from connecting truck lines, at each terminal and request information as to the monthly figures on collections from shippers, the amount of these collections kept by Riss, the amount paid to interline carriers and the amount received by Riss from connecting lines. The second group of interrogatories [I-M and I-P], yet under objection, seek information as to the plaintiff's net income before taxes for all trucking operations performed for the United States and identical information with respect to the transport of ammunition and explosives for the United States.

With respect to the first group, it is plaintiff's position that, in view of the manner in which its records are kept, the only way to obtain the precise information desired by defendants would be to analyze every individual freight bill cut by Riss. It is argued that this would be a burdensome task since about five million bills would be involved in the operation. Defendants reply that they are entitled to know the traffic gained or lost by plaintiff at each of its terminals during the years 1950 to 1957 in order to be able to test plaintiff's charges that its losses of business were due to defendant's unlawful conduct.

The court has heard argument on these objections several times in whole or in part. At the last session, on February 24, 1959, the court urged both sides to hold a conference among themselves in an effort to work out an arrangement satisfactory to all. Such a conference was held on March 3 and its results were first brought to the court's attention by a letter from Mr. McGlothlin dated March 9, 1959 sent on behalf of defendants concerned with these interrogatories. It was there stated that plaintiff's counsel had agreed to furnish, among other data, monthly figures as to revenue inbound and outbound from each of its terminals, along with revenues and tonnage received from connecting carriers. With respect to the second group of requests, it was said that plaintiff had agreed to provide the defendants with a study it was preparing showing a breakdown of the cost of the plaintiff's operations for the United States Government, if the study appears satisfactory to the plaintiff from an accounting standpoint. Plaintiff's counsel, however, in his letter to Mr. McGlothlin dated March 13, 1959, states a different version of what he had agreed to during the conference. He explains that he had only offered to provide certain samples of the kind of records kept by the company, some of them involving monthly figures and had

offered to furnish complete sets of records in the form regularly kept if defendants would be willing to accept them instead of a bill-by-bill analysis. In a letter dated March 16 to the court, Mr. McKay, an associate of Mr. McGlothlin, contended that defendants' counsel had not agreed to and had not been authorized to agree to accept "monthly figures" as adequate answers to the first group of interrogatories. In view of the inability of counsel to reach a settlement, defendants request the court to rule on the objections now.

 The initial sentence of Rule 33, Federal Rules of Civil Procedure, reads as follows:

"Any party may serve upon any adverse party written interrogatories to be answered by the party served or, if the party served is a public or private corporation or a partnership or association, by any officer or agent, who shall furnish *such information as is available to the party*." (Emphasis supplied.)

The term "available" could be used in an absolute sense as meaning obtainable at any cost in time, money and effort or it could indicate that which is *reasonably* available to the party interrogated. In dealing with interrogatories involving substantial amounts of research and compilation of data, the courts have often exercised their discretion and applied a kind of "rule of reason" in the construction and application of Rule 33. As Judge Holtzoff pointed out in Aktiebolaget Vargos v. Clark, D.C.D.C.1949, 8 F.R. D. 635, at page 636:

"So, too, interrogatories are not to be used in an oppressive manner. An adverse party should not be required to perform burdensome labors or to execute difficult and expensive tasks, in searching for facts and classifying and compiling data. A litigant may not compel his adversary to go to work for him."

It has also been said that the court should not require an interrogated party to search its own records in order to compile and correlate information for the benefit of its adversary where the adversary has the right to inspect the records themselves. H. K. Porter Co. v. Bremer, D.C.N.D.Ohio 1951, 12 F.R.D. 187. In Porter v. Montaldo's, D.C.S.D. Ohio 1946, 71 F.Supp. 372, the court declined to require the defendant in a Price Control Act suit brought by the government to go through complicated accounting and auditing operations on his own books in order to show in what instances defendant had violated the price regulations. It was also pointed out in Cinema Amusements, Inc. v. Loew's, Inc., D.C.D.Del.1947, 7 F.R.D. 318, 321 that:

> " * * * Clearly an interrogated party must furnish relevant information in his possession which can be obtained without great labor or expense.
>
> "Interrogatories under Rule 33, however, cannot be construed so as to displace entirely the right or necessity of a party to obtain information and compile data at his own expense by discovery process through the inspection of books or documents under Rule 34."

The underlying rationale of these decisions seems to be that burdensome research is properly considered beyond the scope of Rule 33. It is the court's conclusion that interrogatories under Rule 33 were never intended to compel an adversary to search and analyze more than five million documents in order to furnish the answers. Therefore, plaintiff's objections to interrogatories I A–E 23 (a)–(f) in their present form must be sustained.

No ruling will be made with respect to the objections filed as to interrogatories I-M and I-P since the above-mentioned correspondence indicates a possibility that these matters might be settled by an agreement of counsel. Counsel for the parties will be allowed 30 days from this date within which to arrive at an agreement regarding these interrogatories.

Counsel for plaintiff will submit an appropriate order.