**RISS & COMPANY, Inc., Plaintiff,**

**v.**

**ASSOCIATION OF AMERICAN RAILROADS et al., Defendants.**

**Civ. A. No. 4056–54.**

United States District Court
District of Columbia.

June 6, 1960.

308

A. Alvis Layne, Jr., Robert L. Wright, Lester M. Bridgeman, Morton A. Brody, Washington, D. C., for plaintiff Riss & Co., Inc.

William E. Miller, Stephen Ailes, Richard A. Whiting, Gregory S. Prince, Philip F. Welsh, Washington, D. C., for Assn. of American Railroads.

Stuart S. Ball, Richard J. Flynn, J. H. Hays, Amos M. Mathews, J. W. Nisbet, Chicago, Ill., Lawrence Cake, John Guandolo, Washington, D. C., for The Assn. of Western Railways.

Samuel E. Gates, New York City, Chisman Hanes, James L. Kaler, Washington, D. C., for Traffic Executive Assn. of Eastern Railroads.

C. Brewster Rhoads, Joseph W. Swain, Jr., Philadelphia, Pa., for Eastern Railroad Presidents Conference.

Francis C. Reed, Powell Pierpoint, New York City, Robert M. Gray, Washington, D. C., for Carl Byoir & Associates, Inc.

Francis M. Shea, New York City, Prime F. Osborn, Louisville, Ky., for Atlantic Coast Line R. R. Co.

Stuart S. Ball, J. H. Hays, Amos M. Mathews, J. W. Nisbet, Chicago, Ill., for The Atchison, T. & S. F. Ry. Co.

Hugh B. Cox, James H. McGlothlin, James C. McKay, Washington, D. C., Edwin H. Burgess, John L. Rogers, Jr., Baltimore, Md., for The Baltimore & O. R. R. Co.

Edward K. Wheeler, Robert G. Seaks, Washington, D. C., for The Chesapeake & O. Ry. Co.

Stuart S. Ball, J. H. Hays, Amos M. Mathews, J. W. Nisbet, Chicago, Ill., for Chicago, B. & Q. R. Co., Chicago, M., St. P. & Pac. Ry. Co., Chicago & N. W. Ry. Co., and Chicago, R. I. & P. Ry. Co.

Hugh B. Cox, James H. McGlothlin, James C. McKay, W. T. Pierson, Washington, D. C., P. H. Donovan, Cleveland, Ohio, for Erie R. R. Co.

Stuart S. Ball, J. H. Hays, Amos M. Mathews, J. W. Nisbet, Chicago, Ill., for Great Northern Ry. Co.

Stuart S. Ball, J. H. Hays, Amos M. Mathews, J. W. Nisbet, Chicago, Ill., for Illinois Cent. R. R. Co., Missouri, K. & T. Ry. Co., Missouri Pac. Ry. Co.

Edward K. Wheeler, Robert G. Seaks, Washington, D. C., Gerald E. Dwyer, New York City, for New York Cent. R. Co.

Stuart S. Ball, J. H. Hays, Amos M. Mathews, J. W. Nisbet, Chicago, Ill., for Northern Pac. Ry. Co.

Hugh B. Cox, James H. McGlothlin, James C. McKay, Washington, D. C., John B. Prizer, Carl Helmetag, Jr., Lewin W. Wickes, Philadelphia, Pa., for The Pennsylvania R. Co.

Stuart S. Ball, J. H. Hays, Amos M. Mathews, J. W. Nisbet, Chicago, Ill., for St. Louis-S. F. Ry. Co., Southern Pac. Co., Union Pac. R. R. Co., Wabash R. R. Co., Minneapolis, St. P. & S. S. M. Ry. Co.

Francis M. Shea, New York City, Henry L. Walker, Washington, D. C., for Southern Ry. Co.

Francis M. Shea, Harold J. Gallagher, New York City, Charles T. Abeles, Richmond, Va., for Seaboard Air Line Ry. Co.

SIRICA, District Judge.

This is a private antitrust action for treble damages and injunction brought by Riss & Company, a Kansas City trucking concern, against twenty-three of the nation's Class I railroads, four railroad associations and a public relations firm, Carl Byoir and Associates, Inc.[1]

Plaintiff's contention, as set forth on page one of its "Memorandum Summarizing Plaintiff's Conspiracy Proof against all Defendants", is that the defendants conspired to monopolize the transportation of ammunition and explosives for the United States Government in violation of Sections 1 and 2 of the Sherman Act (15 U.S.C.A. §§ 1, 2) by means which, if considered by themselves, are entirely lawful. Plaintiff claims that the purpose of this unlawful conspiracy was to obtain for the railroads, as a whole, at least 90% of the government munitions traffic, without regard to the merits of any particular railroad or group of railroads as competitors for such traffic. Plaintiff further alleges that the railroad association defendants and the public relations firm were the agents of the individual railroads in accomplishing this unlawful purpose and that the key to the participation of the individual railroads is their knowledge of the alleged unlawful design.[2]

---

1. Prior opinions dealing with preliminary motions and discovery matters are reported in Riss & Co. v. Association of Western Rys., D.C.D.C.1958, 159 F.Supp. 288; Riss & Co. v. Association of Western Rys., D.C.D.C.1958, 162 F.Supp. 69; Riss & Co. v. Association of American R.R., D.C.D.C., 170 F.Supp. 354, certiorari denied Atlantic Coast Line R. Co. v. Riss & Co., 105 U.S.App.D.C. 382, 267 F.2d 659, certiorari denied 361 U.S. 804, 80 S.Ct. 108, 4 L.Ed.2d 57; Riss & Co. v. Association of American R.R., D.C.D.C.1959, 23 F.R.D. 211; Riss & Co. v. Association of American R.R., D.C. D.C.1959, 24 F.R.D. 7; Riss & Co. v. Association of American R.R., D.C.D.C. 1959, 178 F.Supp. 438, certiorari denied D.C.Cir., No. 15,476, March 7, 1960.

2. The opinion of this Court in Riss & Co. v. Association of American R.R., 170 F. Supp. 354, supra, sets forth in detail the

The trial of this case began on January 5, 1960, and plaintiff has now completed the presentation of its evidence. The trial transcript numbers 11,158 pages, and the number of actual trial days totals 67. Plaintiff has introduced 283 exhibits, and the various defendants have had marked for identification 378 documents, of which 353 have been used on cross-examination. Now, after almost five months of trial, the Court has before it Motions to Dismiss or for a Directed Verdict, filed by all defendants pursuant to rules 41 and 50 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

This opinion will first consider defendants' Motions to Dismiss the Complaint. Plaintiff has offered evidence which it contends shows that certain rate reductions by the defendant railroads in the fall of 1955 and the spring of 1956 were made for the purpose of eliminating plaintiff from the business of transporting ammunition and explosives for the United States Government; i. e., that such rate reductions were overt acts pursuant to a pre-existing conspiracy to eliminate plaintiff as a railroad competitor for this traffic. In 1958, defendants moved this Court to suspend proceedings and refer these challenged rate reductions to the Interstate Commerce Commission under the doctrine of primary jurisdiction. Defendants argued then that the intent and effect of these rate reductions, made pursuant to procedural agreements approved by the Commission, should be first considered by the Commission, so that the Court could obtain that agency's expert opinion on this issue before trial. Defendants contended that these rate reductions were immunized from the operation of the antitrust laws by virtue of 49 U.S.C.A. § 5b(9). The Court denied this motion. The Court of Appeals for the District of Columbia Circuit held that such issue should be referred to the Interstate Commerce Commission if, in

the opinion of the trial court, it was "the 'sole or dominant' issue in the case", (Atlantic Coast Line R. R. Co. v. Riss & Co., 1959, 105 U.S.App.D.C. 382, 267 F.2d 659, 660), and that referral was not necessarily required:

"* * * where the agreement is only one of a considerable number of overt acts alleged and where the policy favoring referral is clearly outweighed by other factors such as the probability of undue delay * * *." Atlantic Coast Line R. R. Co. v. Riss & Co., 1958, 105 U.S.App.D.C. 380, 267 F.2d 657, 658.

■ This Court, thereafter, in Riss & Co. v. Association of American R. R., 170 F.Supp. 354, supra, found that the challenged rate practice was not the sole or dominant issue in the case, and again denied the motion to suspend. A petition for writ of certiorari was denied by the Court of Appeals for the District of Columbia Circuit (267 F.2d 659, supra) and a motion for leave to file a petition for certiorari was denied by the Supreme Court (Atlantic Coast Line R. R. v. Riss & Co., 1959, 361 U.S. 804, 80 S.Ct. 108, 4 L.Ed.2d 57). In its earlier opinion in this matter, this Court found that the rate reduction practice was not the sole or dominant issue. The present motion to dismiss is based on defendants' contention that plaintiff's evidence makes it clear that the intent and effect of the rate reductions "in reality is the 'dominant issue'" (Memorandum in Support of Motion to Dismiss or Direct Verdict for all Defendants, p. 2). The Court is not in agreement with this argument.

After almost five months of trial, the Court is convinced more than ever that the challenged rate reduction is not the "sole or dominant issue" in this case. Defendants' motions to dismiss are accordingly denied.

Defendants' Motions for Directed Verdict are based essentially on three

---

factual background of this case. However, plaintiff has not introduced evidence on some of the charges indicated therein; e. g., "that defendants tried to

infiltrate and make use of * * * the Illinois Parent-Teachers Association" (170 F.Supp. at page 358).

grounds: (1) the recent decision of the Supreme Court in Talley v. State of California, 1960, 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559; (2) lack of substantial evidence of a pre-existing conspiracy in violation of the Sherman Act; and (3) lack of substantial evidence of the causation of injury or fact of damage. These grounds will be considered in order.

In the presentation of its prima facie case, plaintiff's evidence of the alleged "pre-existing conspiracy" consisted in part of documents from which a jury could find that the defendants used the so-called non-attribution or "third-party technique" in which the author or sponsor of publicity is not disclosed. It is plaintiff's contention that such publicity methods, when done for an unlawful purpose (e. g., monopoly), are not protected by the First Amendment guarantees of freedom of speech and press (Cf: Noerr Motor Freight, Inc. v. Eastern R. R. Presidents Conference, D.C.E.D.Pa.1957, 155 F.Supp. 768, affirmed 3 Cir., 1959, 273 F.2d 218, certiorari granted 1960, 362 U.S. 947, 80 S.Ct. 862, 4 L.Ed.2d 866).

In the recent Talley case, the Supreme Court had occasion to deal with the problem of anonymous speech. There the Court held invalid a broad municipal ordinance of the City of Los Angeles which provided, in substance, that no handbills should be distributed which did not bear on their face the name and address of the person who caused the same to be printed, written, compiled, manufactured or distributed. Talley was convicted of distributing pamphlets of the "National Consumers Mobilization" which urged the reader to boycott certain merchants who carried products of manufacturers who did not give equal employment opportunity to certain minority groups. His conviction was reversed by the Supreme Court which, after citing examples showing that, historically, anonymous pamphlets have played an important role in the fight for freedom, proceeded to the rationale of its holding:

"We have recently had occasion to hold * * * that there are *times and circumstances* where States may not compel members of groups engaged in the dissemination of ideas to be publicly identified. Bates v. [City of] Little Rock, 361 U.S. 516 [80 S.Ct. 412, 4 L.Ed.2d 480]; N.A. A.C.P. v. [State of] Alabama, 357 U.S. 449, 462 [78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488]. The *reason for those holdings was that identification and fear of reprisal* might deter perfectly peaceful discussions of public matters of importance. This broad Los Angeles ordinance is *subject to the same infirmity.*" [362 U.S. at page 65, 80 S.Ct. at page 539]. Emphasis added.

■ Defendants cite Talley for a blanket holding that *all* anoymous publicity is thus protected by the Constitution and that therefore the publicity activities by the corporate defendants and associations complained of here are similarly protected. The Court does not agree. In Talley and Little Rock, the basis for the Supreme Court's ruling was that established fears of reprisal and intimidation might deter minority groups from peaceful discussion on matters of public interest. Such is not the situation here. The railroad defendants are among the largest corporations in the country. It certainly cannot be contended that the railroads of the nation will be in danger of intimidation or reprisal if their identities in connection with publicity are revealed. Plaintiff's evidence could justify a jury in finding that defendants employed hostile publicity against plaintiff by means of the "third-party technique". For the reasons mentioned, this Court finds that Talley is not controlling here. See Noerr Motor Freight v. Eastern R. R. Presidents Conference, D.C.E.D.Pa.1957, 155 F.Supp. 768, affirmed 3 Cir., 1959, 273 F.2d 218, certiorari granted 1960, 362 U.S. 947, 80 S.Ct. 862, 4 L.Ed.2d 866.

Before proceeding to a consideration of defendants' contention that the record discloses a lack of substantial evidence

from which a jury could find the existence of a pre-existing conspiracy and the fact of damage to plaintiff, the Court feels it would be helpful to review some of the well established principles of law relating to motions for directed verdict.

■ In considering defendants' motions for a directed verdict, the trial court must, of course, view the evidence and all inferences from the standpoint most favorable to the plaintiff (Shewmaker v. Capital Transit Co., 1944, 79 U.S.App.D.C. 102, 143 F.2d 142). However, a party is not entitled to rely on inferences which are unreasonable and the jury may not speculate (Galloway v. United States, 1943, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458). Regarding the quantum of evidence, it has long been the rule in the Federal Courts that a mere scintilla of evidence is insufficient to allow the case to go to the jury (Pennsylvania R. R. Co. v. Chamberlain, 1933, 288 U.S. 333, 344, 53 S.Ct. 391, 77 L.Ed. 819; Murray v. Towers, 1956, 99 U.S. App.D.C. 293, 239 F.2d 914). Substantial evidence must be present (Baltimore & O. R. R. Co. v. Postom, 1949, 85 U.S. App.D.C. 207, 177 F.2d 53). Where the facts are in dispute, and where fair minded men may draw different inferences from the evidence relating to them, a jury is the proper tribunal to try the issue (Tiller v. Atlantic Coast Line R. Co., 1943, 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610; Kendall v. Gore Properties, Inc., 1956, 98 U.S.App.D.C. 378, 236 F. 2d 673; McCoy v. Moore, 1944, 78 U. S.App.D.C. 346, 140 F.2d 699).

■ It is in the light of these principles that the Court will consider defendants' contention that there is not substantial evidence from which the jury could find the existence of a conspiracy to violate the antitrust laws. The Court feels in this regard that it would be impracticable and, further, that it is unnecessary to review in this opinion all the evidence presented by the plaintiff in this already voluminous record. The Court has listened attentively to all the evidence, the excellent arguments by all counsel on these motions, and has examined on more than one occasion all of the documentary evidence introduced. It is, of course, elementary in conspiracy cases of this nature that until the participation of an individual defendant has been established by competent evidence admissible against it, evidence of acts of other alleged co-conspirators will not be admitted to establish the particular defendant's participation in the alleged conspiracy (United States v. United States Gypsum Co., D.C.D.C.1946, 67 F.Supp. 397, 452, reversed on other grounds 1948, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746; Flintkote Co. v. Lysfjord, 9 Cir., 246 F.2d 368–387, certiorari denied 1957, 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46).[3] Mere membership in an unincorporated association, in and of itself, is, of course, not sufficient to establish participation in a conspiracy (Phelps Dodge Refining Corp. v. Federal Trade Commission, 2 Cir., 1943, 139 F.2d 393, 396). However, continued membership in such an association and payment of dues, with a reasonable opportunity to learn of the association's activities on behalf of its members, are sufficient to charge the members with liability for such activities (Metropolitan Bag & Paper Distributors Ass'n v. Federal Trade Commission, 2 Cir., 240 F.2d 341, 344, certiorari denied 1957, 355 U.S. 819, 78. S.Ct. 24, 2 L.Ed.2d 35). The individual railroad members of the associations can be held responsible for the unlawful conspiratorial acts or declarations of the associations only if they are shown to.

3. Antitrust conspiracy cases are, of course, usually built on circumstantial evidence (United States v. Morgan, D.C.S.D.N.Y. 1953, 118 F.Supp. 621, 634). "Conspiracies are seldom capable of proof by direct testimony and may be inferred from the things actually done and from the circumstances." (Baush Machine Tool Co. v. Aluminum Co., 2 Cir., 72 F.2d 236, 241, certiorari denied 1934, 293 U.S. 589, 55 S.Ct. 104, 79 L.Ed. 683).

have known and approved of such activities and of their unlawful objective.[4]

■ On the basis of all the evidence presented, the Court feels that a jury could find that a conspiracy of the type alleged by the plaintiff did exist, with the defendant associations and the public relations firm as its principal participants. Further, the Court feels, on the basis of the evidence admitted as to each individual railroad defendant, that the jury could find that each of these defendants, though not involved in every detail of such conspiracy, had knowledge and approved of its illegal objective and the general means of carrying it out. If the evidence is such that a jury could find that a conspiracy under the anti-trust laws existed, only slight evidence is necessary to connect individual conspirators with it (United States v. Morgan, D.C.S.D.N.Y.1953, 118 F.Supp. 621, 743–744).

Defendants' third point on these Motions for Directed Verdict is that the evidence does not present sufficient proof of causation of injury or fact of damage from which the jury could find that plaintiff was injured *as a result* of any conspiracy on the part of the defendants. The Court, in the trial of this case has, in its discretion, allowed counsel for defendants considerable latitude on cross-examination, even to the extent of allowing examination on matters which might be more properly part of an affirmative defense. The number of documents marked for identification and used by defense counsel on cross-examination totals 353. This cross-examination has placed before the jury charts and documents from which they could conclude that several factors were responsible for the loss which plaintiff alleges it suffered as a result of the alleged conspiracy. Defendants' cross-examination has attempted to develop that a number of causes other than the conduct of the defendants were responsible for the plaintiff's loss. Plaintiff's president on cross-

examination has denied that these factors were responsible for plaintiff's losses. These other influences include the end of the hostilities in Korea in 1953, the cancellation by the Interstate Commerce Commission of certain of the temporary operating rights of the plaintiff to transport ammunition and explosives, difficulties resulting from certain purchases of defective equipment by plaintiff, and certain errors in management and business judgment by plaintiff.

■ Judge Wyzanski, in a well-reasoned opinion in the case of Momand v. Universal Film Exchanges, Inc., D.C. D.Mass.1947, 72 F.Sup. 469, affirmed 1 Cir., 1948, 172 F.2d 37, certiorari denied 1949, 336 U.S. 967, 69 S.Ct. 939, 93 L. Ed. 1118, a case where the evidence tended to show multiplicity of causes of injury, stated as follows:

> " * * * the loosest construction [of the Anti-trust laws] would require a plaintiff in a private Anti-trust case to bear the burden of proving that defendants' unlawful acts * * * were either a cause of a specific fraction of his losses or, at any rate, *a more substantial cause of his losses than was any other known factor*. 72 F.Supp. at page 482. Emphasis added.

Applying this test to the evidence of damages presented by plaintiff and the evidence tending to show other causes elicited by defendants on cross-examination, the Court feels that in view of all the evidence the jury could find that the alleged acts of defendants were "a more substantial cause" of plaintiff's loss "than was any other known factor".

■ Accordingly, the Motion of all Defendants for a Directed Verdict is denied. The Court does not wish to be understood as indicating that at the close of all the evidence, the plaintiff will of necessity have made a case for the jury. The Court only holds that at this stage of the evidence, the defendants

---

4. Defendants agree that this is a correct statement of the law. See "Defendants 9, 16, 21, etc., Memorandum in Support of Motion for Directed Verdict, page 9."

**314**

are not entitled to a directed verdict. Defendants, of course, under the provisions of Rule 50, Federal Rules of Civil Procedure, may renew such motion at the close of all the evidence.

 All exhibits introduced by plaintiff may now be received against all defendants. The jury will be instructed that they may consider these exhibits against any or all of the defendants, giving to them the weight to which they think they are entitled.

Counsel for plaintiff will prepare an appropriate order in accordance with this opinion.