**William T. LOESCH, an individual doing business as Loesch Hair Experts, Petitioner,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**
**No. 7610.**

United States Court of Appeals
Fourth Circuit.

Argued June 17, 1958.

Decided June 30, 1958.

Richard M. Welling, Charlotte, N. C., for petitioner.

James M. Henderson, Atty., Federal Trade Comm., Washington, D. C. (Earl W. Kintner, Gen. Counsel, James E. Corkey, Asst. Gen. Counsel, and J. B. Truly, Atty., Federal Trade Comm., Washington, D. C., on brief), for respondent.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and PAUL, District Judge.

SOBELOFF, Chief Judge.

The manufacturer of a hair remedy who was ordered by the Federal Trade Commission to cease and desist from making certain advertising claims which the Commission found false and misleading seeks review of the order. He raises a single issue, whether he was arbitrarily and capriciously restricted in cross-examination of Government witnesses before the hearing examiner. Violation of the due process clause of the Fifth Amendment is asserted.

The Federal Trade Commission's complaint charged William T. Loesch, an individual doing business as Loesch Hair Experts,[1] with false advertising. The Commission offered in evidence his advertisements, which, in summary, represented that his preparation, if used in the suggested manner, would kill bacteria beneath the scalp; eliminate dandruff; cure all local scalp diseases; stop excessive hair fall; prevent all types of baldness, including "male-pattern-type" baldness; and induce new hair to grow and old hair to become thicker. Loesch also held himself out as a "trichologist."

To refute these several claims, the Government offered the testimony of three medical experts, Dr. Behrman, Dr. Rostenberg, and Dr. Rattner. Dr. Behr-

1. William B. Zimmerman, Loesch's advertising agent, was also a party to the proceedings below, but he did not appeal from the hearing examiner's initial decision and is not a petitioner here.

man, the first of the three to testify, was examined in New York City on September 13, 1955. At the conclusion of his testimony, the hearings recessed until September 15, so that, according to Loesch, the Government attorney would have a day's interval to confer with his medical experts in Chicago, before resuming hearings there.

In Chicago, on September 15, Dr. Adolph Rostenberg, Jr., a dermatologist and teacher at the University of Illinois, was the Government's witness. In the course of cross-examination, Loesch's counsel asked him whether he talked to the Government lawyer before taking the stand. The doctor said that he had, and the Government counsel conceded it. Loesch's lawyer then began to question the doctor as to whether the Government's lawyer had told him of Dr. Behrman's classification of baldness. Dr. Rostenberg replied that "we didn't go into any explicit testimony that Dr. Behrman did give." The witness stated that the Government lawyer had asked him some of the same questions as in direct examination.

The hearing examiner then turning to Loesch's counsel, said "You were intimating that Mr. Callaway [the Government attorney] told him what Dr. Behrman testified, so he testified the same. As a matter of fact, he didn't testify the same. * * * You are trying to smear the witness and Mr. Callaway by asking him what Mr. Callaway told him to testify. I don't like things like that. We deal with men who can't be told things like that. Even if Mr. Callaway was that type of lawyer, which he isn't, from my experience, we don't do business that way * * *."

When Dr. Rattner, the third Government expert, testified the next day, the following colloquy occurred between Loesch's lawyer and the examiner:

"Q. Now, your Honor, I don't care to go into this about with whom the doctor talked and preparation for this hearing. If your rulings will be the same I will let the record show it.

"Hearing Examiner: Yes.

"Mr. Welling: Could the record show that the question would be overruled if I asked who the doctor talked with in preparation for this hearing?

"Hearing Examiner: No, I have no objection to the doctor testifying as to whether he talked with Mr. Callaway before he took the stand. I assume that any lawyer, when he puts a witness of this type on the stand, talks to him before he puts him on the stand. He wouldn't be exercising proper judgment if he didn't do so, so I certainly don't want, by virtue of that, to refuse permission or draw any—don't want the Commission to draw any unfair or improper conclusions from the fact that he has talked to him.

"Mr. Welling: Well, Sir, if there is going to be the same ruling as yesterday—

"Hearing Examiner: Yes, my ruling would be the same on that type of question."

Loesch's counsel did not further press this line of interrogation, or indicate for the record what he expected to elicit from the witness. In the argument of the appeal he conceded that he had no particular point in mind. He insisted, however, that in his experience witnesses, thus questioned, often are disconcerted and the effect of their testimony is diminished.

Extensive cross-examination of each of the three Government experts on the subject of the direct testimony was in fact permitted. Further cross-examination to elicit whether the witness had, at the interview with the Government's counsel or on other occasions, expressed views in conflict with his direct testimony, was not specifically precluded. If the cross-examiner intended to probe this possibility, he did not make it clear that this was his purpose, and that his aim was not merely to harass the witness. His explanation on appeal is that the hearing examiner's rebuke discouraged

further pursuit of the matter, and that he was forced to abandon this phase and leave unclear the purpose of the challenged question. Reading the record, however, we are not left with the impression that counsel was actually intimidated.

The hearing examiner might well have refrained from criticizing the lawyer. Nevertheless, this brush between examiner and counsel pertained to a minor incident in a vigorously contested trial, which had no material effect and could not have prejudiced Loesch's case.

The contention made for Loesch is that by cutting off cross-examination, the hearing officer violated the rule of the Jencks case, Jencks v. United States, 1957, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103, and thereby denied him due process of law as guaranteed by the Fifth Amendment. His argument proceeds substantially as follows: The spirit of the Supreme Court's decision in the Jencks case is that a witness may be confronted on cross-examination with any earlier statement; and, if even papers in the Government's possession may be demanded, surely the witness may be asked what he told the lawyer who called him to the stand. The point need not be laden down with a discussion of Jencks. It is recognized that a witness is subject to cross-examination within reasonable bounds to test his credibility, and Jencks need not be invoked here to establish this rule. See, 3 Wigmore, Evidence (1940), Secs. 1022, 1023, p. 697 et seq. Cf., 5 U.S.C.A. Sec. 1006(c), A.P.A. Sec. 7c. In the instant case the production of no document in the hands of the Government was sought, and the Jencks doctrine is not involved.

Moreover, apart from the technical correctness of the hearing examiner's ruling, in appraising the practical consequences of the exclusion of the testimony, it must be realized that there is a difference between confronting a witness with an earlier written statement, which it is too late for him to alter, and asking him what he said orally on a former occasion in the hope of developing a conflict with his present testimony. The hope, in the circumstances shown, is too remote and insubstantial to be made the foundation for a claim of prejudice in the barring of the inquiry, and certainly nothing resembling denial of due process appears.

As Mr. Justice Black, speaking for a unanimous Court in Reilly v. Pinkus, 1949, 338 U.S. 269, 276, 70 S.Ct. 110, 114, 94 L.Ed. 63, said: "The power to refuse enforcement of orders for error in regard to evidence should be sparingly exercised. A large amount of discretion in the conduct of a hearing is necessarily reposed in an administrative agency." See also, Davis Administrative Law (1951), Sec. 148, p. 469 et seq. The scope and extent of cross-examination is ordinarily within the discretion of the court or examiner, and we think that no prejudicial or arbitrary exercise of that discretion has been shown.

Affirmed and enforced.