KEELE HAIR & SCALP SPECIALISTS, INC., et al., Petitioners,

v.

FEDERAL TRADE COMMISSION, Respondent.

No. 17900.

United States Court of Appeals
Fifth Circuit.

Feb. 17, 1960.

Richard M. Welling, Charlotte, N. C., for petitioners.

Miles J. Brown, Juiles Carter, Jr., Attys., Alan B. Hobbes, Asst. Gen. Counsel, Daniel J. McCauley, Jr., Gen. Counsel, F.T.C., Washington, D. C., for respondent.

Before TUTTLE, CAMERON and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This is another case [1] involving "internationally famous trichologists" who can demonstrate "how you can have hair for a lifetime" and "how hair can be grown on balding heads"; "the hopeless

1. See Mueller v. United States, 5 Cir., 1958, 262 F.2d 443 and Erickson v. Federal Trade Commission, 7 Cir., 1959, 272 F.2d 318.

cases are few" and "[only] if a man is completely, shiny bald is he in this lost category". Or so they say.

Keele Hair & Scalp Specialists, Inc., William Keele, Thelma P. Keele, J. H. Keele, Rogers Hair Experts, Inc., and American Advertising Bureau Inc. petition for review of an order to cease and desist issued against them by the Federal Trade Commission. The Commission's complaint charged petitioners with engaging in unfair and deceptive acts and practices in violation of the Federal Trade Commission Act.[2] We dismiss the petition for review and affirm the Commission's order.

The Commission complaint charged petitioners with disseminating, through the United States mails and by various means in interstate commerce, false and misleading advertisements.[3] These advertisements represented that the petitioners' treatments and the use of their drug and cosmetic preparations would check thinning hair, prevent and overcome all types of baldness, and induce new hair to grow where before there was only fuzz. The complaint charged that the petitioners' treatments and drug preparations will have no effect what-

ever on "male pattern baldness", the type of baldness that occurs in 90 to 95 per cent of the cases of baldness. The Commission contends that the advertisements were false and misleading in using the word "trichologist" to represent that the Keele or Rogers employees and representatives had competent training in dermatology and other branches of medicine dealing with the treatment of scalp disorders. Petitioners denied that they had engaged in any false or misleading advertising.

A hearing was held and evidence was presented by both parties. The Examiner found that petitioners' practices violated the Federal Trade Commission Act and issued a cease and desist order that did not however require petitioners, in the future, to disclose certain material facts.[4] Both parties appealed to the Commission. The Commission denied petitioners' appeal, granted the appeal of counsel supporting the complaint, and issued a Commission order tracking the Examiner's order except by modifying it to require the disclose of certain material facts relating particularly to male pattern baldness. The order now before us[5] is substantially similar to the order ap-

2. The Federal Trade Commission Act gives the Commission authority to prevent persons from using unfair or deceptive practices in commerce. 15 U.S.C.A. § 45(a). The Act provides that the dissemination of false advertisement is an unfair or deceptive practice in commerce: 15 U.S. C.A. § 52(b). False advertisement is defined as one which is misleading in a material respect. 15 U.S.C.A. § 55(a).

3. "(a) (1) The term 'false advertisement' means an advertisement, other than labeling, which is misleading in a material respect; and in determining whether any advertisement is misleading, there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, sound, or any combination thereof, but also the extent to which the advertisement fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the commodity to which the advertisement relates under the conditions prescribed

in said advertisement, or under such conditions as are customary or usual." 15 U.S.C.A. § 55.

4. The complaint alleged that because petitioners failed to disclose and reveal in their advertisements (1) that the vast majority of cases of thinning hair and baldness are the beginning and more fully developed states of male pattern baldness and (2) that petitioners' preparations will have no therapeutic value in the treatment of this type of baldness, petitioners' advertisements were misleading in a material respect and constituted "false advertisements" as defined in the Federal Trade Commission Act.

5. "The petitioners were ordered to cease and desist: 1. Disseminating or causing to be disseminated by means of the United States mails or by any means in commerce, as 'commerce' is defined in the Federal Trade Commission Act, any advertisement which represents, directly or by implication that the use of said preparations, alone or in conjunction with any method of treatment: Will check thin-

proved of in Erickson v. Federal Trade Commission, 7 Cir., 1959, 272 F.2d 318.

### I.

*Are the Commission's findings supported by substantial evidence?*

In reviewing the Commission's findings the Court is guided by certain basic principles. The findings of the Commission are presumed to be supported by competent evidence, and if so supported are conclusive. Federal Trade Commission v. A. McLean & Son, 7 Cir., 1936, 84 F.2d 910, certiorari denied 299 U.S. 590, 57 S.Ct. 117, 81 L.Ed. 435; Federal Trade Commission v. Wallace, 8 Cir., 1935, 75 F.2d 733; 15 U.S.C.A. § 45(c). The inferences reasonably to be drawn from the evidence are for the Commission. Federal Trade Commission v. Pacific States Paper Trade Ass'n, 1927, 273 U.S. 52, 63, 47 S.Ct. 255, 71 L.Ed. 534. The possibility of drawing either of two inconsistent inferences from the evidence does not prevent an administrative body's finding from being supported by substantial evidence. N.L.R.B. v. Nevada Consolidated Copper Corp., 1942, 316 U.S. 105, 62 S.Ct. 960, 86 L.Ed. 1305. The inferences drawn by the administrative agency will not be set aside merely because the courts would have drawn a different inference. N.L.R.B. v. Southern Bell Tel. & Tel. Co., 1943, 319 U.S. 50, 60, 63 S.Ct. 905, 87 L.Ed. 1250.

Some of the newspaper advertisements read, in part: "Famous tricholo-gist will demonstrate how to grow thicker hair * * * and guarantees it"; "A complete, private examination is given by a trichologist * * *"; "This examination is very thorough and highly technical." The advertisements pictured a man in a white coat examining the scalp of a patient against a background of a chart depicting a cross-section of the scalp. In these advertisements the petitioners invited prospective customers to visit a temporary office, usually at a hotel, and receive a "free demonstration" and advice as to the condition of their hair and scalp. The petitioners or their representatives, attired in their white coats, interviewed the customers in a room containing the ubiquitous scalp chart and other props such as an array of test-tubes, a flasholens, and an orange stick. The trichologist (here salesman), pointing to the chart from time to time, would give a short talk explaining the causes of baldness, to the best of his ability within the limits of the smattering of knowledge picked up in a five-day sales-training course at Keele's Hair Experts. The trichologist examined the customer's scalp under a bright light. He questioned the customer about his health. Two of petitioners' salesmen testified that customers had referred to them as "Doctor" during the course of the examination. There is ample evidence to support the Commission's finding that petitioners in their advertisements and in

ning hair, prevent or overcome baldness, cause new hair to grow, or cause the hair to become thicker, unless such representations be expressly limited to cases other than those of male pattern baldness, and unless the advertisement clearly and conspicuously reveals the fact that the great majority of cases of thinning hair and baldness are the beginning and more fully developed states of same male pattern baldness and that said preparations will not in such cases check thinning hair, prevent or overcome baldness, cause new hair to grow, or cause hair to become thicker. ¶2. Disseminating or causing to be disseminated by means of the United States mails or by any means in commerce, as 'commerce' is defined in the Federal Trade Commis-sion Act, any advertisement which represents, directly or by implication: That respondents or any of their agents or employees are trichologist, or that they have had competent training in dermatology or other branches of medicine having to do with the diagnosis and treatment of disorders of the hair or scalp. ¶3. Disseminating or causing to be disseminated by any means any advertisement for the purpose of inducing or which is likely to induce, directly or indirectly, the purchase of said preparations in commerce, as 'commerce' is defined in the Federal Trade Commission Act, which advertisement contains any representation prohibited in paragraphs 1 and 2 hereof."

their treatments falsely represented that their salesmen were trained in dermatology or some other branch of medicine.

Webster's New International Dictionary (2d Ed.1958) defines trichology as "the science treating of the hair". The scientific training that Keele's representatives received consisted of "about five days out on the road and about a day in learning the chart talk, how to set up a display and examine a client and to enroll them". The so-called trichologists were salesmen with no medical training. Describing them as "trichologists" was a fraudulent use of a title which, by natural association in one's mind with such titles as "neurologist", "gynecologist", or "endocrinologist", was intended to deceive the public.[6]

The Commission found that the petitioners had fraudulently represented that their preparation and treatment would cure male pattern baldness. Three physicians who were specialists in dermatology testified that male pattern baldness is the most common type of baldness (90 to 95 per cent). The two specialists in dermatology who testified for the petitioners also recognized male pattern baldness as the most common type, that heredity is a factor, and that once it starts there is nothing to stop it.[7] The uncontradicted testimony is that male pattern baldness can not be prevented, arrested, or corrected.

Although 90 to 95 per cent of baldness is of the incurable, male pattern type, petitioners' advertisements representing that they could prevent baldness made no exceptions for this type. The petitioners advertised that they could treat all types of baldness, for example: "But the hopeless cases are few"; "No man need be bald"; "But today baldness is unnecessary"; "Ninety-five per cent of all cases of hair loss come within the scope of Keele Treatment"; "Keele has a successful treatment for every type of hair loss"; "Did you know that 76% of all U. S. males will lose their hair to some degree by their 28th birthday? But—did you know that 95% of this disfiguring hair loss could be avoided with proper corrective treatment under trichological supervision?"; "95% of all cases of Hair Loss can be helped * * * the real truth is that most bald men need not have lost their hair at all." The Commission's findings that petitioners' "preparations, whether used singly or in combination, and regardless of the method of treatment followed in connection with the preparations, will have no effect on male pattern baldness" is fully supported by the testimony of the medical experts who appeared before the Commission.

In Erickson v. Federal Trade Commission, 7 Cir., 1959, 272 F.2d 318, Erickson Hair and Scalp Specialists utilized the same sure-fire selling techniques as Keele Hair Experts. They too ran afoul of the Federal Trade Commission. The cease and desist order in that case is almost identical with the one issued in the instant case. In a well considered opinion the Seventh Circuit affirmed the Com-

6. Dr. John H. Lamb, a physician specializing in dermatology, testified for the Commission that to be termed a trichologist a person should have medical training, with a medical degree and some special training in dermatology. Other eminent dermatologists testified that to be able to diagnose and treat disorders of the hair and scalp, a person should have a degree in medicine and special training in dermatology.

7. One of petitioners' advertisements states: "Trichologist Green dodged no issues. He quickly took up the most widely spread theory of baldness—heredity. 'Mankind's unrealistic belief that baldness is hereditary stems from a misinterpretation of the theory of genetics. Theory does not state that any person must be bald because baldness exists in the family. What it does say, is that in some families, a tendency exists toward an undernourished scalp.' The purpose of the Rogers Hair and Scalp Clinic is to teach the methods of strengthening the weak scalp and nourishing it to a healthy, vigorous condition. 'A healthy scalp will grow hair if it is not already completely bald', assures Green."

mission order. See also Mueller v. United States, 5 Cir., 1958, 262 F.2d 443.[8]

## II.

*Has the Commission the power to require affirmative disclosure?*

 Petitioners argue, citing Alberty v. Federal Trade Commission, 1950, 86 U.S.App.D.C. 238, 182 F.2d 36, 43, certiorari denied 340 U.S. 818, 71 S.Ct. 49, 95 L.Ed. 601, that the Commission cannot order them to disclose what their product and treatment will *not do*.[9] The Act states that the term "false advertising" includes "not only representations made or suggested * * * but also the extent to which the advertisement fails to reveal facts material in the light of such representations." Cease and desist orders compelling affirmative disclosure are enforced by the courts when they are necessary to prevent deception.[10]

There is nothing in the Alberty case that prevents enforcement of a cease and desist order requiring affirmative disclosure. The Alberty case simply held that the Commission must make certain findings before compelling affirmative disclosure.[11] In the instant case the Commission made the required findings and on the basis of these findings issued its order requiring that the petitioners

disclose affirmatively that Keele preparation would not be effective against male pattern baldness. Failure to disclose that approximately 95 per cent of the cases of baldness fall within the male pattern type is plainly misleading, when the petitioners claim they treat effectively virtually all cases of baldness.

## III.

*Did the petitioners change their advertisements in accordance with the request of the Commission?*

 The complaint was filed against the petitioners on July 17, 1956. Petitioners allege that beginning May, 1955, their advertisements were changed materially to conform to the wishes of the Commission. They allege that the early offensive advertisements were not used after that date. The contention is without merit. At least five of the exhibits admitted into evidence against the petitioners without objections were advertisements published in 1956. They contained the same kind of false advertising that appeared in the earlier advertisements. The Commission is entitled to enforcement of its order prohibiting advertisements misleading the public when the advertisements are of a type apparently long characteristic of the parties in this case.

8. Mueller v. United States, 5 Cir., 1958, 262 F.2d 443, was an action by the government to recover a penalty for violation of a cease and desist order. Although the issues raised in the appeal were dissimilar to the instant case, the facts are very close. See also Loesch v. Federal Trade Commission, 4 Cir., 1958, 257 F.2d 882, certiorari denied 358 U.S. 883, 79 S.Ct. 125, 3 L.Ed.2d 112 (similar facts but different issues); Johnson v. Federal Trade Commission, 5 Cir., 1959, 266 F. 2d 560, certiorari denied 361 U.S. 914, 80 S.Ct. 259, 4 L.Ed.2d 184 (per curiam opinion affirming a cease and desist order); Wybrant System Products Corp. v. Federal Trade Commission, 2 Cir., 1959, 266 F.2d 571, certiorari denied 361 U.S. 883, 80 S.Ct. 154, 4 L.Ed.2d 119 (per curiam affirming the Commission's order).

9. The petitioners complain of that portion of the order that requires them to

reveal " * * * the fact that the great majority of cases of thinning hair and baldess are the beginning and more fully developed stages of said male pattern baldness and that said preparations will not in such cases check thinning hair, prevent or overcome baldness, cause new hair to grow, or cause hair to become thicker."

10. L. Heller & Son v. Federal Trade Commission, 7 Cir., 1951, 191 F.2d 954; Haskelite Mfg. Corp. v. Federal Trade Commission, 7 Cir., 1942, 127 F.2d 765.

11. In Alberty the court held that the Commission must find either one of two things before it can require affirmative disclosure: (1) that failure to make such statement is misleading because of the consequences from the use of the product, or (2) that failure to make such statement is misleading because of the things claimed in the advertisement.

The petition to review and set aside the cease and desist order of the Commission is denied, and enforcement of the order of the Commission is now ordered.

Enforcement ordered.

CAMERON, Circuit Judge.

I concur in the result except that dealt with in Part II of the opinion (Power of the Commission to require affirmative disclosures) from which I dissent.