Grady L. RUSHING, an individual, doing business as Marcel Company, Petitioner,

v.

FEDERAL TRADE COMMISSION, Respondent.

No. 19439.

United States Court of Appeals Fifth Circuit.

July 10, 1963.

Rehearing Denied Aug. 29, 1963.

John E. Jackson, Jr., John E. Jackson and Baldwin J. Allen, New Orleans, La., for petitioner.

J. B. Truly, Asst. Gen. Counsel, Charles C. Moore, Jr., Atty., James McI. Henderson, Gen. Counsel, Jno. W. Carter, Jr., Atty., F. T. C., Washington, D. C., for respondent.

Before RIVES, LEWIS * and BELL, Circuit Judges.

LEWIS, Circuit Judge.

Petitioner is engaged in a correspondence school business aimed at procuring and charging students for a course of study and instruction purporting to prepare purchasers thereof for United States Civil Service examinations. He here seeks review of an order of the Federal Trade Commission requiring him to cease making certain designated representations in the promotion of the business which were found by the Commission to be unfair and deceptive practices and thus violative of the Federal Trade Commission Act, 15 U.S.C.A. § 45. The order was entered after an extensive and prolonged hearing relating to petitioner's business practices and requires petitioner to cease and desist from representing, directly or by implication that:

1. Civil Service examinations for particular positions described orally or in any writing have been announced or are about to be given in or for any geographical or United States Civil Service area unless such examinations actually have been announced or are about to be given in or for such area and adequate time remains for the filing of applications to participate in such examinations.

2. The completion of any series of materials or course of instruction offered by the respondent in commerce will enable a person to pass the Civil Service examination for the position selected by such person.

3. Respondent's materials or course of instruction provide training for Civil Service positions.

4. Persons solicited to purchase respondent's materials or course of instruction are examined or screened as to their possession of qualifications for positions to be sought before they are permitted to purchase such materials or course.

5. Respondent will continue to train or instruct persons who have completed a purchased series of materials or course of instruction until they are appointed to a Civil Service position or misrepresenting in any manner the extent or nature of instruction that he gives to purchasers.

6. Representing, directly or by implication:

 (a) That purchasers of respondent's materials or course will be notified when or where examinations will be held;

 (b) That persons completing said materials or course of instruction and passing a Civil Service examination are assured of or will obtain Civil Service positions; or

 (c) That respondent or his agents or representatives are connected with the United States Civil Service Commission or any branch thereof or any other agency of the United States Government.

7. Using any document that simulates a court process in connection with the collection of accounts from debtors; or using any other document or practice which may suggest or imply that a debtor is being sued when such is not the fact.

Upon appeal, and against a background of 1241 pages of printed record, petitioner now contests the validity of the order but with such generalization [1] that appel-

---

* Of the Tenth Circuit, sitting by designation.

1. Although this procedure does not fulfill the requirements of Rule 24(2) (a) of this Court we have reviewed the entire record for error in recognition of the impact of the Commission order upon petitioner.

late review of particularized claims of error is impossible. However, petitioner asserts broadly that the evidence is insufficient to support the Commission's findings, that the Commission has attempted to judge the value of petitioner's course of study, and that the entire administrative process is so contaminated with prejudice and abuse as to constitute a denial of due process.

 The evidence is more than adequate to sustain the Commission's determination that this enterprise was badly in need of regulatory restraint. In advertisements and brochures, petitioner solicited contact with persons desiring civil service employment by extolling the good salaries and employment benefits with enthusiasms such as:

"GET A CIVIL SERVICE JOB. Train now, Exams coming up. * * *"

"Now is the most opportune time to start preparing for Civil Service position. Written examinations will be held for many permanent Civil Service Jobs, * * *."

"THE BEST WAY TO GET AN APPOINTMENT IS TO PREPARE WITH OUR TRAINING SERVICE AND STAND AMONG THE HIGHEST ON THE GOVERNMENT EXAMINATION."

"Whichever job you pick, we will coach you for it successfully. * *"

"* * * A personal appointment is necessary to determine your qualifications. If you qualify, you will be accepted for training. * *"

"* * * Check two or three positions before he (our field counsellor)

calls. He will let you know whether or not you can qualify."

The hearing examiner found that the implications of such advertisements were false and misleading in that civil service examinations for many of the positions described had not been announced in areas where the solicitation was made; that completion of the petitioner's course would not assure the applicant of being able to pass the examination; that the training offered was in most instances general and would not provide training for a particular position; and that the salesmen for petitioner were not informed as to the qualifications necessary for a particular position and were unable to make a proper evaluation of qualifications.

The application for instruction signed by the prospective subscriber stated:

"Should I fail to pass the first examination taken, I am to receive, without further payment, training until I RECEIVE MY APPOINTMENT."

The trial examiner found this statement to contain a deceptive implication.

Salesmen were employed by petitioner to follow "leads" gained from responses to advertisements and were encouraged to press home sales of the courses with the vigor of the traditional "hard sell." [2] The hearing examiner held that the petitioner was bound by the representations of its salesmen and that the salesmen led their contacts to believe without foundation that they would be notified of times and places where examinations were to be given, that they would be specially trained for the positions selected

2. Examples from Marcel's bulletins to salesmen:
"Every person you see will give you excuses as to why they 'Can't act now.' * * * Protect yourself against excuses BEFORE you get them * * * If you told them BEFORE they could even give you a single one, that your job is to cull or weed out curiosity seeds, fly-by-niter, nosey people, sightseers, lazy people, non-ambitious people, people trying to find an excuse to keep from improving themselves, people with no feeling for their family, and their future, people that want time to think it over, * * * people who don't make much effort to get the money. Tell them this BEFORE they can give you ANY excuse * * *."
"* * * Be a good talker when it is your turn. * * * Be sure you don't DRIFT from your 'pitch'. Be sure you don't let them in the drivers seat. Be sure you keep control at all times. Be sure you are watching the faces of all. * * *"

by them, that persons completing the courses and passing the examination were assured of obtaining positions, and that the petitioner and his sales people were connected with the United States Civil Service Commission.

Finally, to enforce payment under the contract when a purchaser defaulted on his time payments, respondent has used forms simulating legal pleadings and has threatened garnishment, although no court action was brought. For example:

"FINAL NOTICE before GARNISHMENT

"WE ARE GIVING YOU 48 HOURS TO MAKE A PAYMENT ON YOUR ACCOUNT. OTHERWISE WE SHALL BE FORCED TO COLLECT OUR MONIES THRU GARNISHMENT OF YOUR WAGES.

"MARCEL CO."

Witnesses who had become interested in taking the course testified as to representations by salesmen that they would never be out of work after studying the lessons sent by Marcel, that they believed Marcel's representatives to be representatives of the United States Government, that they were not allowed to read the contract before signing it, that they were guaranteed jobs, that they were qualified despite very limited previous educations and that they were threatened with legal proceedings when they fell behind in their payments.

One witness who was unable to read the contract by reason of lack of elementary education signed it but was unable to complete the lessons sent through the mail to him. Other witnesses understood that they would be able to cancel their contracts within a limited period of time but when they attempted to do so were brusquely dismissed. Some never received the lessons for which they had paid.

■ Since the factual findings of the Commission are well supported by the evidence they are conclusive as a basis for review, 15 U.S.C.A. § 45(c), as are the permissible inferences to be drawn from the facts. Keele Hair & Scalp Specialists, Inc. v. Federal Trade Commission, 5 Cir., 275 F.2d 18.

■ We find no basis for petitioner's complaint that the Commission's order is jurisdictionally excessive as constituting a judgment upon the value of petitioner's course of study. An understanding of petitioner's materials was, of course, necessary to a determination of the case and in this regard the trial examiner stated:

"The quality of the materials has not been made the subject of critical testimony or evaluation. A cursory examination of them persuades me to the conclusion, having in mind the testimony of the Commission's witness, an official of the United States Civil Service Commission, that the material could be of help to persons preparing to take Civil Service examinations. Although I make this observation, I do not find that the material does, in fact, prepare anybody to take and pass an examination or to qualify for a position."

The substance of the Commission's decision is not that petitioner's product was without value but that his representations far exceeded the potential of his material.

■ Finally, petitioner attacks the entire administrative process of the Commission by pointing to such facts as: credibility was given each of the Commission's witnesses; petitioner was charged with violations even though he gave full cooperation to investigators; and the original trial examiner assigned to the case and who indicated dissatisfaction with Commission counsel during prehearing procedures was succeeded at the hearing by another examiner. Sufficient it is to say that the credibility of witnesses is the responsibility of the fact finder and that cooperation is no guarantee of forgiveness for violations of law. However we do note that the arrogant impertinence of the Commission's trial counsel before the original

trial examiner does little to inspire confidence in the administrative process.

The order of the Commission is affirmed in its entirety and is ordered enforced.