**S. W. NOGGLE COMPANY,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

No. 72-1678.

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1973.

Decided May 1, 1973.

Harry L. Browne, Kansas City, Mo., for petitioner.

M. Namrow, Atty., N. L. R. B., Washington, D. C., for respondent.

Before GIBSON, BRIGHT and ROSS, Circuit Judges.

GIBSON, Circuit Judge.

Petition for Review and Cross-Application for Enforcement of an Order of the National Labor Relations Board. The Board's Decision and Order are reported at 199 NLRB No. 107.

The S.W. Noggle Company was found by the NLRB to have committed an unfair labor practice in violation of §§ 8(a) (1) and (3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (3), by threatening to discipline and later by the discharge of Mike Masonbrink. It is the contention of the General Counsel that the employer discharged Masonbrink because he advocated that the employees go out on strike for a new contract.

The Department Store, Package, Grocery, Paper House, Liquor and Meat Drivers, Helpers and Warehousemen, Local No. 955, an affiliate of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the Union), had represented a unit consisting of the employer's warehousemen and drivers for 30 years. On September 30, 1971, the three-year contract between the employer and the Union expired. Negotiations were in prog-

ress at the time of the events with which this action is concerned.

Masonbrink was a part-time employee of the Noggle Company from October 1969 to May 1970 when he enlisted in the Coast Guard. He returned from this military service in June 1971. At the end of June, through the efforts of his sister, Vickie Harrison, an order clerk for Noggle, he was rehired on a full time basis. He worked as a truck driver until mid-October when he requested and received a transfer to the warehouse. He worked in the warehouse about six weeks, until his discharge on December 1, 1971.

During the period when he was employed in the warehouse the Trial Examiner found that Masonbrink "was far from being a model employee." On several occasions he refused to perform his duties as he was instructed to do although he stated that he later would go ahead and do them. He was reported by Bramer, the leadman, to Thomas Turner, the general manager for Noggle, who in turn complained of his conduct to the Union.

Several witnesses testified that they had heard Mansonbrink state that he would like to draw "rocking chair money" which was explained as meaning state unemployment compensation. Masonbrink did not deny this but only stated that he could not remember saying it.

On November 15, at a meeting between the unit employees and several union representatives Masonbrink strongly advocated that the Union strike the company because of its failure to negotiate a new collective bargaining agreement. Leadman Bramer reported Masonbrink's position to General Manager Turner. Turner spoke to Vickie Harrison on about November 29, and told her, "Vickie, we're going to have to do something about Mike. He has the men upset about going out on strike." When she replied that it was because the company had not negotiated a new contract yet he responded, "I can't help that. He still has to get his orders out." The Trial Examiner found that this was a threat to discipline Masonbrink.

Two days later, after Vickie had spoken to her brother concerning this conversation, Masonbrink called to Turner while he was in the warehouse, and told him that if he had anything to say to him he should do so directly and not to tell his sister. Turner made no response to this. At this point the stories of the parties diverge. Masonbrink states that they then began to discuss the performance of his work. Turner stated that he asked Masonbrink to fill a rush order and that Masonbrink refused because he was already working on another order. One of the other warehousemen heard this conversation and his version, while not identical to that of Turner's tends to support Turner's version. Both Masonbrink and Turner testified that Masonbrink said that if Turner thought he could do a better job he could do it himself, and that Turner stated to Masonbrink that if he did not like working there he could quit. Masonbrink admits that he told Turner that if he did not like the way he was doing his job Turner could fire him. This challenge was repeated several times and finally Turner did fire Masonbrink.

The sole issue on this appeal is a factual one, whether the finding of the Trial Examiner and the Board that Masonbrink was discharged for his advocacy of a strike was supported by substantial evidence in the whole record. 29 U.S.C. § 160(e). The Supreme Court has defined "substantial evidence" as:

> " '. . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. Labor Board, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 '[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' Labor Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660. This is something less than the weight of the

evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence  Labor Board v. Nevada Consolidated Copper Corp., 316 U.S. 105, 106, 62 S.Ct. 960, 961, 86 L.Ed. 1305; Keele Hair & Scalp Specialists, Inc. v. FTC, 275 F.2d 18, 21." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 619–621, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966) (footnotes omitted).

■ Considering first the finding by the Board that Turner had not requested Masonbrink to fill a rush order and been refused, we hold that this finding is not supported by substantial evidence on the whole record. The issue was decided by the Trial Examiner as a matter of credibility, balancing the testimony of Turner that he had told Masonbrink to fill the order and been refused against Masonbrink's denial of the incident and testimony that the conversation concerned only his work performance generally. The Trial Examiner appeared to ignore the testimony of Ralph Roberts, one of the other warehousemen, to the effect that he had heard the conversation between Turner and Masonbrink, and that he had heard Turner tell Masonbrink to fill an order. Although Roberts did not testify that Masonbrink had openly refused to comply with the instruction, Robert's version of the confrontation is more consistent with Turner's version than was Masonbrink's in that Masonbrink denied that he was even told to fill an order.

Turning next to the statement made by Turner to Vickie Harrison with regard to Masonbrink's advocacy of striking, the Examiner failed to fully examine this incident. Beyond reciting the facts of the statement and the bare finding that "I also find that Turner's statement to Vickie constituted a violation of Section 8(a)(1) of the Act" there was no analysis of the statement. Turner denied that it was a threat to discharge Masonbrink. He stated that he wanted Vickie to see if she could get Mike to settle down. In view of the fact that Vickie Harrison had been instrumental in getting Masonbrink the job, and the cordial relationship which obviously existed between the small group of employees and the management, this is not an unlikely explanation for the conversation. From the record of this conversation it would be erroneous to draw the conclusion that Turner was threatening to fire Masonbrink for advocating a strike.

In view of the fact that Masonbrink had been employed in the warehouse only a short time, and that after the one occasion when a complaint had been made of Masonbrink's sub-par performance Turner had promptly notified the Union, this record cannot support the finding by the Examiner that Turner had "put up with quite a bit" or condoned the prior misconduct of Masonbrink. This finding appears incredible. By employing such reverse logic, the mere condoning of inferior work, would give the employee a shield against dismissal for cause.

■■ Even without the refusal by Masonbrink to fill the order on the day of his discharge, the record does not support the finding that he was not discharged for cause but for his union activities.[1] It is clear that he initiated the confrontation with Turner. It is

1. Of course, an employee, absent a protective agreement, may be discharged with or without cause so long as it is not for a reason prohibited by the National Labor Relations Act.

"It must be remembered that it is not the purpose of the Act to give the Board any control whatsoever over an employer's policies, including his policies concerning tenure of employment, and that an employer may hire and fire at will for any reason whatever, or for no reason, so long as the motivation is not violative of the Act." NLRB v. Ace Comb Co., 342 F.2d 841, 847 (8th Cir. 1965).

See also NLRB v. Red Top, Inc., 455 F.2d 721, 726 (8th Cir. 1972) (cases cited at n. 4).

further undisputed that he several times challenged Turner to discharge him if Turner did not like the way he did his work, indicating that he would not even attempt to meet the standards which his employer would expect. This sort of defiant attitude by employees is not protected by either a Union shield or the National Labor Relations Act.

Considering the record as a whole, it is clear that the finding of a discriminatory discharge of this hostile and contentious employee is not supported by substantial evidence. Accordingly, the Board's Order which required his reinstatement with back pay will not be enforced.

Enforcement denied.