UNITED STATES of America,
Appellee,

v.

Gene Arlyn WILLIAMS, Appellant.

UNITED STATES of America,
Appellee,

v.

Robert Brice ELLIOTT, Sr., Appellant.

Nos. 72–1828, 72–1829.

United States Court of Appeals,
Fourth Circuit.

Submitted Jan. 9, 1973.

Decided May 7, 1973.

Frank Patton Cooke, Gastonia, N. C., (on brief) for appellant in No. 72–1828.

Arthur Goodman, Jr., Charlotte, N. C., (on brief) for appellant in No. 72–1829.

Keith S. Snyder, U. S. Atty., and David B. Sentelle, Asst. U. S. Atty. (on brief) for appellee in Nos. 72–1828 and 72–1829.

Before BRYAN, Senior Circuit Judge, and FIELD and WIDENER, Circuit Judges.

PER CURIAM:

These appellants were tried together by a jury in the United States District Court for the Western District of North Carolina. They were found guilty of the first five counts of a seven count indictment charging them with embezzling, abstracting and purloining the moneys, funds and credits of a federally insured bank, in violation of 18 U.S.C. §§ 656 and 2.[1] Count six was dismissed during trial and the jury found them not guilty as to count seven. They allege that various errors were committed during the course of their trial and seek reversal of their convictions and an acquittal or, alternatively, a new trial. For reasons that will be set forth in this opinion, we agree that the appellants are entitled to a new trial.

I

Appellant Williams was employed as a Vice-President of the Security Bank and Trust Company of Salisbury, North Carolina. He was also the branch manager of Security's Belmont, North Carolina branch bank. This was a small branch and was operated by Williams, two cashiers, and perhaps a bookkeeper.

Appellant Elliott was the managing officer of Shoreline Provision Company, a refrigerated trucking company that

---

1. Williams was indicted as principal; Elliott for aiding. 18 U.S.C. § 656 reads as follows:

Theft, embezzlement or misapplication by bank officer or employee, Title 18 U.S.C. § 656

"Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, or a receiver of a national bank, or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both. As used in this section, the term 'national bank' is synonymous with 'national banking association'; 'member bank' means and includes any national bank, state bank, or bank and trust company which has become a member of one of the Federal Reserve banks; and 'insured bank' includes any bank, banking association, trust company, savings bank, or other banking institution, the deposits of which are insured by the Federal Deposit Insurance Corporation. June 25, 1948, c. 645, 62 Stat. 729."

18 U.S.C. § 2 reads as follows:

"§ 2. Principals

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States is punishable as a principal."

specialized in transporting refrigerated products from the East to the West Coast.

In May, 1969, Elliott opened an account, in the name of Shoreline, at Security Bank and Trust Company. Shoreline had other accounts at the Citizens National Bank in Cramerton, North Carolina. Elliott also had established an account in the name of MEW Brokerage Company at the Mechanics and Farmers Bank in Charlotte, North Carolina. MEW Brokerage was a factoring corporation, founded by Elliott, whose purpose was to finance the Shoreline Company.

Subsequent to the opening of the Shoreline account with Security in May, 1969, the Belmont branch of Security issued numerous cashier's checks to Shoreline. Williams, as branch manager, had to approve these checks. The indictments against the appellants arose from certain of these transactions.

The first five counts involved situations where Williams would deliver a Security cashier's check to Elliott, which check was made payable to Shoreline. The consideration to Security for these cashier's checks were checks, at least equal in amount to the appropriate cashier's checks, delivered by Elliott and drawn on Shoreline's various accounts or on the new account of MEW Brokerage. It seems that the checks Elliott gave to Security for which Shoreline received cashier's checks were drawn on insufficient accounts and that Security has never received payment for them. The above events occurred during the period of October 14 to October 21, 1969.

Counts six and seven are not involved in this appeal since count six was dismissed during trial and the appellants were found not guilty as to count seven.

## II

During the course of the trial, the government called Mrs. Peggy Farris

Byrd, a Security employee at the Belmont branch, as one of its witnesses. Her testimony related to the cashier's check referred to in count two of the indictment. It showed that the cashier's check in issue, number 826, had been issued for $57,000 on Friday, October 17, 1969, but was not recorded on her work sheet until Monday, October 20, 1969. She had no independent recollection of the transaction. She further testified that, under normal banking procedure, the check would have appeared on her work sheet either on Friday, October 17, or Saturday, October 18, 1969. The inference the government sought to show from this was that Williams had issued the check on the 17th, and then held it out until the 20th, causing a false entry of the transaction on Peggy Byrd's work sheet, so Elliott could cover the bad check he had given Williams in consideration of the cashier's check. The object obviously was to show Williams' bad intent from this testimony, as well as the facts concerning the specific transaction.

The defense attorneys sought to test Peggy Byrd's recollection by cross-examining her as to how well she remembered the physical layout and other details of the operation of the Belmont branch bank. The government objected to such questions, and the trial court sustained the objections, refusing to allow the defense the opportunity to test the recollection of the witness except as to matters precisely covered on direct examination.

The right to cross-examine the prosecution's witnesses is a fundamental constitutional right under the Sixth Amendment. Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968). Although the scope of cross-examination is within the discretion of the trial court and usually limited to matters brought out on direct,[2] there are exceptions. One of these exceptions is where the cross-examiner challenges the

2. See Bell v. United States, 185 F.2d 302, 310 (4th Cir. 1950), cert. den. 340 U.S. 930, 71 S.Ct. 492, 95 L.Ed. 671 (1951); Smith v. Illinois, supra; Carpenter v. United States, 264 F.2d 565 (4th Cir. 1959), cert. den. 360 U.S. 936, 79 S.Ct. 1459, 3 L.Ed.2d 1548 (1959); 3A Wigmore on Evidence § 944.

credibility of a witness by testing the individual's memory. United States v. Hoffman, 415 F.2d 14 (7th Cir. 1969), cert. den. 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 423 (1969); 3A Wigmore on Evidence (1970) § 995. See also Loesch v. Federal Trade Commission, 257 F.2d 882, 885 (4th Cir. 1958), cert. den. 358 U.S. 883, 79 S.Ct. 125, 3 L.Ed.2d 112 (1958). While the scope of the questioning concerning a witness' credibility may be within the discretion of the trial court, we believe that a denial of all such cross-examination designed to test the recollection of a witness is improper. In our opinion, the questions posed to Peggy Byrd by the appellants' attorneys were pertinent to her credibility and the disallowance of them by the trial court was erroneous. ". . . [T]he range of evidence that may be elicited for any purpose of discrediting is to be *very liberal*. . . . " 3A Wigmore on Evidence (1970) § 944.

### III

Toward the end of the trial, the government called Leonard V. Dahl, an FBI agent, as a witness. His testimony revealed that he had gone to Williams' house on November 17, 1969 to talk to him about the matters involved in these cases. Dahl testified that he advised Williams of his constitutional rights and that Williams signed a waiver. He further testified that he questioned Williams about the cases and that Williams answered his questions. The prosecutor then asked Dahl if Williams told him what experience he had had in banking prior to working for Security. Dahl said that Williams had told him he had fourteen years prior experience in banking. Then, on cross-examination, Williams' counsel asked Dahl to read the rest of his notes as to the content of the conversation. The prosecutor objected and the court sustained the objection, refusing to allow any part of the notes to be read except that which may have touched on the questions asked on direct examination. Although the statement was proffered into evidence and ordered

filed by the trial judge, it does not appear with the record.

In Banning v. United States, 130 F.2d 330 (6th Cir. 1942), cert. den. 317 U.S. 695, 63 S.Ct. 434, 87 L.Ed. 556 (1943), the court said:

"It frequently happens that on direct examination of a witness as to a conversation, transaction or other matter, counsel will bring out only such parts as are favorable to the party he represents. When this occurs, it is the right of the cross-examiner to put the trial court in possession of the full details respecting the matters within the scope of the direct examination." 130 F.2d at 338.

■ Dahl's testimony, of course, by showing Williams' experience in the banking business, sought inferentially to prove intent and bad purpose. Any statement of Williams' made to Dahl at the time going to show lack of intent or bad purpose should have been admitted, and Williams was entitled to show it by the witness Dahl. VII Wigmore on Evidence (1940) § 2115. The denial of the right of the defendant to show statements from which innocence could be inferred along with those which tended to show guilt was error.

### IV

In the present cases, the appellants were indicted for embezzling, abstracting and purloining money from Security in violation of 18 U.S.C. §§ 656 and 2. The trial court instructed the jury on the charge of embezzling.

The court charged the jury that they could find the defendants guilty if they found that Williams "knew or *should have known* by understanding the affairs of the banking world and familiarizing himself with the accounts on deposit, that he issued a cashier's check and, by so doing, embezzled . . ." [Emphasis added]. Another part of this instruction said: ". . .; fourth, that he, knowing that it was not his own, converted it to his own use *or to the use of some third person*, not the

true owner." [Emphasis added]. Although no objections were made to these instructions, they are obviously erroneous.

It is true that criminal intent must be inferred from the facts and circumstances of the case. Hall v. United States, 286 F.2d 676 (5th Cir. 1961), cert. den. 366 U.S. 910, 81 S.Ct. 1087, 6 L.Ed.2d 236 (1961). However, we are of opinion that, since intent is an essential element under § 656, the trial court misled the jury by using the phrase "*should have known*" in its instructions on intent. By giving effect to such a phrase, the jury could have convicted appellants if they found that Williams was guilty of nothing more than negligence in the handling of the bank's affairs. This will not support an embezzlement conviction under the statute. The government must show that the acts were done willfully and intentionally, not by inadvertence or carelessness.

We are further of opinion that the embezzlement charge given by the trial court was too broad. One of the elements of the crime of embezzlement as used in the statute is that the money or property embezzled be converted to the embezzler's own use or benefit. United States v. Northway, infra; 120 U.S. 327, 333, 7 S.Ct. 580, 30 L.Ed. 664;[3] Black's Law Dictionary 4th Ed. p. 614. Thus, the definition of embezzlement used by the trial court was erroneous in that it permitted conviction for embezzlement although the funds may have been put to the use of a third person.

While the court did not instruct the jury as to the meaning of abstracting under the statute, unless it may be inferred from the charge which was given, we note that United States v. Northway, 120 U.S. 327, 7 S.Ct. 580, 30 L.Ed. 664 (1887), defines the word abstract to mean " . . . to take or withdraw from so that to abstract the funds of the bank, or a portion of them, is to take and withdraw from the possession and control of the bank the moneys and funds alleged to be so abstracted." 120 U.S. 327, 334, 7 S.Ct. 580, 584. Of course, it is not unlawful to merely take or withdraw the funds of a bank by a person having the authority so to do. What is unlawful is to take and withdraw from the possession and control of the bank moneys in the bank's possession and control without its knowledge and consent and which will deprive the bank of its lawful possession and control of such moneys. A mere negligent act would not be enough under the statute to convict for abstracting. The act would have to be done willfully and intentionally, secretly or dishonestly, and with the knowledge of the person causing the withdrawal of the funds that he was without authority so to do. See *Northway*, supra; *Webster's New International Dictionary*, 2nd Ed., Unabridged.

## V

On retrial, we trust the jury will be instructed with the elements of the offense charged. The attorneys, of course, have a right to submit suggested jury charges to the court.

Judges Bryan and Field are of opinion a new trial is required by Part IV of the opinion, believing it to be plain error, especially insofar as the submission to the jury allowed them to convict for Williams' carelessness. F.R.Cr.P. 52(b). They believe the error mentioned in parts II and III of the opinion is harmless. F.R.Cr.P. 42(a).

Judge Widener believes a new trial is required because of parts II and III of the opinion. He believes the error mentioned in Part IV should not be noticed because not objected to in the trial court. F.R.Cr.P. 30.

Since we are of opinion that a new trial is required, we do not reach the other assignments of error, including the challenge to the favor of a juror.

Reversed and remanded for a new trial.

---

3. *Northway* was decided under Rev.Stat. § 5209, a predecessor of § 656.